NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 53

No. 2020-183

Kaleb Vasseur

v.

State of Vermont

Supreme Court

On Appeal from
Superior Court, Washington Unit,
Civil Division

January Term, 2021

Timothy B. Tomasi, J.

Neil L. Nussbaum, Law Offices of Neil L. Nussbaum, Moretown, for Plaintiff-Appellant.

Thomas J. Donovan, Jr., Attorney General, and David Boyd and Rachel Smith, Assistant
 Attorneys General, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Plaintiff Kaleb Vasseur, an elementary school student in Fayston, Vermont, filed an action in the superior court arguing that the way his school district elects its school board members violates the Vermont Constitution. The court dismissed the complaint for lack of constitutional standing. Plaintiff now appeals the court's order that denied his motion to amend the complaint because the proposed amended complaint also failed to satisfy the standing requirement. We affirm.

¶ 2. In Brigham v. State, this Court held that under the Education and Common Benefits Clauses of the Vermont Constitution, Vt. Const. ch. I, art. 7, ch. II, § 68, Vermont children have a fundamental right to education and a right to equal educational opportunities regardless of where

they reside in the state. 166 Vt. 246, 263, 268, 692 A.2d 384, 394, 397 (1997). Based on Brigham, plaintiff filed a complaint in the superior court alleging that the way in which Act 46 of 2015 allows eighteen school districts in the state to vote for members of the school board deprives children living in rural areas within those districts of equal educational opportunities under the Vermont Constitution. More specifically, plaintiff claimed that Act 46 allows his school district to adopt an electoral system in which each town within the district elects a certain number of school board members and those members' votes are weighted according to the town's population. Thus, his rural town of Fayston, with 10.5 percent of his school district's population, was allotted 10.5 percent of the votes in the school board, in contrast to Waterbury, which was four times more populous and accordingly had greater voting power in the school board. Meanwhile, plaintiff observed that other school districts in the state have adopted "at-large" voting systems, in which all the voting residents of the district vote for, and are represented by, a given number of school board members. Plaintiff thus asked the court to invalidate Act 46 and dissolve the eighteen unconstitutional school boards he identified.

¶ 3. The superior court granted the State's motion to dismiss under Vermont Rule of Civil Procedure 12(b)(1), concluding that plaintiff lacked constitutional standing because, assuming there was an injury, he had not shown that the State caused the injury. The court observed that while Act 46 sought to achieve consolidation of school districts, it did not compel a district to choose any particular electoral system to elect its school board.

¶ 4. Plaintiff then filed motions to reconsider and amend the complaint, attaching a second amended complaint. In this amended complaint, plaintiff made the same substantive claim but added that "[s]ome Vermont towns with comparatively low populations have been rendered too weak to provide an adequate education to Vermont's schoolchildren that reside in their towns" and that "[c]omparatively low school board representation causes comparatively diminished

2

educational opportunities for the students living in the affected towns." He further maintained that school districts cannot consolidate without approval from the Vermont State Board of Education and that the State caused the alleged injury when the Board approved the formation of his school district with the challenged electoral system.

¶ 5. The court denied the motions, holding that the new complaint also failed to allege that the State caused plaintiff's injury. It concluded that because the new complaint did not satisfy the standing requirement, allowing plaintiff to amend the complaint would be futile.

¶ 6. Plaintiff appeals from that ruling, arguing that the superior court abused its discretion in denying his motion to amend the complaint. He argues that he cured the standing defect in his first complaint by alleging in his second that the Board of Education caused the alleged injury by approving the formation of his school district. Plaintiff further maintains that the amended complaint alleges an injury because it is unfair to allow the residents of more populous towns to have more voting power in a school board. As an example of injury, he alleges for the first time in his reply brief that his school board adopted a motion to "continue exploration and development of a . . . plan . . . that includes closing Fayston Elementary School," which he attends. From this, we are asked to infer that the school board is exploring this action because Fayston voters have less voting power in the school board than other towns in the district and that if this action is taken, he will be subject to unequal educational opportunities.[1]

¶ 7. "Under the rules of civil procedure, leave to amend the complaint 'shall be freely given when justice so requires,' " and we adhere to a tradition of liberally allowing amendments to pleadings when opposing parties will not be prejudiced. Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4, 184 Vt. 1, 955 A.2d 1082 (quoting V.R.C.P. 15(a)). But a court may deny a motion to amend

---

[1] Plaintiff does not contend that his district's school board election system violates the constitutional requirement of one-person, one-vote, but instead rests his case on the contention that it leads to unequal educational opportunity.

when, among other reasons, amendment would be futile. Id.; see also Gus' Catering, Inc. v. Menusoft Sys., 171 Vt. 556, 559, 762 A.2d 804, 808 (2000) (mem.) (affirming trial court's refusal to allow amendment of complaint where amendment would have been futile given substantive law). Amendment is futile if the amended complaint cannot withstand a motion to dismiss. Prive v. Vt. Asbestos Grp., 2010 VT 2, ¶ 13, 187 Vt. 280, 992 A.2d 1035 (noting that "the only way to know whether the . . . motion to amend is futile is to analyze whether plaintiff's . . . amended complaint would survive defendant's motion to dismiss"). We review the superior court's decision on a motion to amend for abuse of discretion. Colby, 2008 VT 20, ¶ 4.

¶ 8.     Our inquiry is accordingly whether plaintiff's second amended complaint could survive a motion to dismiss for lack of standing. We agree with the superior court that plaintiff failed to satisfy the constitutional standing requirement. We do so, however, on the alternative basis that he failed to allege an injury in fact. Because we discern no injury, we do not consider whether causation was adequately pleaded.[2]

¶ 9.     "Vermont courts are vested with subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests." Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286. One component of this principle is that plaintiffs must have standing to litigate the action, "that is, they must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." Parker v. Town of Milton, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998). This jurisdictional requirement enforces "the separation of powers between the three different branches of government by confining the judiciary to the

---

[2] Our agreement with the superior court that plaintiff lacks standing is not a full embrace of the court's reasoning for denying the motion to amend the complaint. As noted, the court dismissed the action because, assuming the existence of an injury, plaintiff failed to allege that the State caused it. In the second amended complaint, however, plaintiff alleged that the State Board of Education caused the alleged injury by approving the formation of his school district with an electoral system that deprived him of equal educational opportunities. The court did not explain why this allegation was insufficient to satisfy the causation prong of the standing requirement.

4

adjudication of actual disputes and preventing the judiciary from presiding over broad-based policy questions that are properly resolved in the legislative arena." Id.

¶ 10.   To satisfy the constitutional standing requirement, "a plaintiff must allege facts on the face of the complaint that show (1) injury in fact, (2) causation, and (3) redressability." Wool v. Office of Prof'l Regulation, 2020 VT 44, ¶ 10, __ Vt. __, 236 A.3d 1250 (quotation omitted). The plaintiff "must present a real—not merely theoretical—controversy involving the threat of actual injury to a protected legal interest rather than merely speculating about the impact of some generalized grievance." Severson v. City of Burlington, 2019 VT 41, ¶ 10, 210 Vt. 365, 215 A.3d 102 (quotation omitted).  In ensuring that a plaintiff has standing at the pleading stage, we "accept all uncontroverted factual allegations as true," "construe those facts in the light most favorable to the nonmoving party," and "assume the truth of all reasonable inferences that may be derived from the pleadings." Id. ¶ 9 (quotations omitted) (alterations omitted).  Finally, the standing inquiry is a distinct analysis from consideration of the merits of a claim, and we are careful to not conflate the two.  See Wool, 2020 VT 44, ¶¶ 11-12 (holding that petitioner had standing despite failure of claim on merits).

¶ 11.   Here, plaintiff did not allege facts in either complaint to satisfy the injury-in-fact prong of the standing doctrine.  As relevant to the injury question, plaintiff merely alleged that "[s]ome Vermont towns with comparatively low populations have been rendered too weak to provide an adequate education to Vermont's schoolchildren that reside in their towns" and that "[c]omparatively low school board representation causes comparatively diminished educational opportunities for the students living in the affected towns."  Plaintiff did not explain how he has received a different education than any other student in his district or the state—how, concretely, he has been harmed by his school district's method of electing school board members.

¶ 12.   Plaintiff bases his claim to standing on <u>Brigham</u>.  There, students and school districts brought a claim that the then-existing system for funding public education in the state resulted in wide disparities in revenues available to school districts and consequent inequality of educational opportunities.  While standing was not challenged in <u>Brigham,</u> "the material facts [were] not in dispute." 166 Vt. at 252, 692 A.2d at 387.  Under that funding system, school districts received part of their funding from local property taxes levied by cities and towns.  We surveyed undisputed evidence that there were "wide disparities in student expenditures . . . among Vermont school districts and that these disparities correlate[d] generally with taxable property wealth within the districts."  <u>Id</u>. at 255, 692 A.2d at 389.  It was also undisputed that the funding disparities resulted in unequal educational opportunities because "[s]chool districts of equal size but unequal funding would not have the capacity, for example, to offer equivalent foreign language training, purchase equivalent computer technology, hire teachers and other professional personnel of equivalent training and experience, or provide equivalent salaries and benefits."  <u>Id</u>. at 255, 692 A.2d at 390.  Such a system deprived Vermont children of their right to equal educational opportunities under the Education and Common Benefits Clauses.  <u>Id</u>. at 268, 692 A.2d at 397.

¶ 13.   The problem with plaintiff's reliance on <u>Brigham</u> is that disparities in education funding across the school districts in the state is a fundamentally different phenomenon than disparities in town-by-town representation on a particular school board.  That the residents of Fayston have less voting power in the school district than those of Waterbury does not automatically mean that Fayston students receive a different education than those of Waterbury.  Plaintiff did not bridge the logical gap between differences in town representation in a school board and differences in educational opportunities.  He did not allege, for example, that he is taught by less skilled teachers, that he has access to fewer or inferior books, to fewer or inferior computers, to fewer or inferior foreign language or extra-curricular activities.  To be sure, plaintiff did not

6

have to prove an injury at the pleading stage of the litigation, but he did have to allege facts in the complaint that show an injury in fact. See Paige v. State, 2018 VT 136, ¶¶ 9-10, 209 Vt. 379, 205 A.3d 526. He failed to do this.

¶ 14. By arguing that his district's school board electoral system is unfair, plaintiff presents us with a generalized grievance and asks us to do precisely what the standing doctrine prevents—"presid[e] over broad-based policy questions that are properly resolved in the legislative arena." Parker, 169 Vt. at 77, 726 A.2d at 480. Plaintiff would have every school district in the state adopt an at-large voting system to choose its school board. But the Legislature enacted a different legislative scheme that gives local education leaders and residents a choice on the matter. See 16 V.S.A. §§ 706b(b)(9), 706e (outlining certain requirements for election of school board members without mandating any particular representational method). Absent a properly pleaded allegation of injury in fact that satisfies the standing doctrine, we have no jurisdiction to review the Legislature's choice.

¶ 15. Plaintiff states for the first time in his reply brief that his school board adopted a motion to "continue exploration and development of a . . . plan . . . that includes closing Fayston Elementary School," which he attends. The argument appears to be that his school might be closed because Fayston has less representation in the school board, and, because his school might be closed, he will receive unequal educational opportunities. "Our law is clear that issues not raised in an appellant's original brief may not be raised for the first time in a reply brief." Maynard v. Travelers Ins. Co., 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987). We are especially reluctant to review this allegation here because our task is to determine whether the superior court abused its discretion in not allowing plaintiff to amend his complaint, and plaintiff did not raise this issue in any of his complaints.

7

¶ 16.    Because plaintiff's second amended complaint could not survive a motion to dismiss for lack of standing, the superior court did not abuse its discretion in denying plaintiff's motion to amend the complaint.

Affirmed.

FOR THE COURT:

_____

Associate Justice