NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 15

No. 22-AP-059

| | |
|---|---|
| Sara Vitale et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| Bellows Falls Union High School et al. | November Term, 2022 |

Timothy B. Tomasi, J.

Deborah T. Bucknam of Bucknam Law, PC, Walden, and Brian K. Kelsey, Daniel R. Suhr, and Jeffrey D. Jennings, Liberty Justice Center, Chicago, Illinois, for Plaintiffs-Appellants.

Susanne R. Young, Attorney General, and David Boyd, Assistant Attorney General, Montpelier, for Defendants-Appellees.

Deborah T. Bucknam of Bucknam Law, PC, Walden, and Leslie Davis Hiner, EDCHOICE, Indianapolis, Indiana, for Amicus Curiae EDCHOICE.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.   **EATON, J.**   Plaintiffs are three sets of parents of schoolchildren who reside in school districts which maintain a public school for at least some grades and do not provide the opportunity for children to attend the public or independent school of their parents' choice for all grades at the state's expense. They raise a facial constitutional challenge to Vermont statutes that allow school districts to choose whether to maintain a public school, permit children to attend an out-of-district public school or an independent school at the state's expense, or some combination of both. The civil division dismissed parents' complaint for failure to state a claim upon which relief could be granted. We affirm.

¶ 2.   Vermont statutes create a system in which school districts may vary concerning what institutions furnish public education to their schoolchildren. Generally, a school district must maintain one or more approved schools within the district to furnish elementary and high school education to its resident children unless the school district is not organized to provide both types of education or the electorate authorizes otherwise. 16 V.S.A. §§ 821(a), 822(a). For elementary education, which covers kindergarten through sixth grade, a school district can operate a public school for its students or authorize the school board to pay tuition for students to attend a public school in another school district or an approved independent school. Id. §§ 11(a)(3), 821(a)(1), (d). The statute does not expressly prohibit a school district from operating a public elementary school and paying tuition for students to attend another public school or an independent school. For high school education, which covers grades seven through twelve, a school district can maintain a public high school, furnish high school education by paying tuition for schoolchildren to attend a public school in another district or an independent school, or both. Id. §§ 11(a)(5), 822(a)(1), (c)(1). The statute explicitly provides that a school board may provide tuitioning to an independent school when it judges that a high school student has "unique educational needs that cannot be served within the district or at a nearby public school." Id. § 822(c)(1)(B). A school district that provides tuition may do so for some or all grades and may designate certain schools for tuitioning or open it up more broadly to include schools meeting statutory requirements. Id. §§ 821, 822.

¶ 3.   Parents allege the following facts in their complaint. Parents reside in school districts that maintain a public school for at least some grades and do not provide tuition for students to attend the school of their parents' choice for all grades. Parents have various reasons for preferring their children to attend a school other than the public school in the district where they reside. There have been instances where their children were bullied and harassed by other students, treated differently than other students by school officials, or not provided with adequate

2

services by the school district in which they reside.[1] Despite residing in school districts which provide public schools for resident children, parents have sought tuition reimbursement for their children to attend the independent schools of parents' preference. Parents want their children to attend the schools that "best fit" the specific needs of their children at the state's expense rather than being placed in a particular school due to their residence.

¶ 4. Parents filed their complaint against the State of Vermont, the Secretary of the Agency of Education, and the State Board of Education (collectively, the "State Defendants") in the civil division, seeking a declaratory judgment that the current statutory scheme described above is facially unconstitutional.[2] They also requested the civil division enjoin the named defendants from requiring students to attend the designated school in their district and order that tuitioning be made available to all students in Vermont. In essence, they seek total school choice for parents at

---

[1] Because parents raise a facial constitutional challenge, it is not necessary to outline more specifically the personal stories they recite to support their claims of dissatisfaction with the public schools in their districts. In a facial challenge, a litigant argues that there is "no set of circumstances" under which the challenged law "could be valid" and seeks the invalidation of the challenged law. In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 22, 212 Vt. 554, 238 A.3d 637 (quotation omitted). By contrast, in an as-applied challenge, the litigant argues that the challenged law "is invalid as applied to the facts of a specific case" and accordingly the remedy sought is narrowed to those facts. Id. Although the State Defendants argue that parents raise an as-applied challenge, parents insist that they bring only a facial challenge on behalf of all Vermont children, and we address their claims as such.

We note some dispute over the exact standard required to succeed on a facial challenge, particularly outside the First Amendment context. See, e.g., United States v. Sup. Ct. of N.M., 839 F.3d 888, 917 (10th Cir. 2016) (noting debate over application of no-set-of-circumstances language to different types of facial challenges and concluding that to extent language applies it is better described as result of facial challenge than test for facial challenge); see also Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (noting disagreement for no-set-of-circumstances language but agreement that First Amendment facial challenges fail where statute has "plainly legitimate sweep" (quotation omitted)). We, however, have no occasion to weigh in on this ambiguity here because the parties do not raise it and because it is not required to reach our conclusion.

[2] The local school districts in which parents and their children reside were initially included as named defendants but parents dismissed their claims against the school districts during the pendency of this appeal.

3

the state's expense for all elementary and high school education.[3] They claim that they are being denied school choice merely because they live in a district that has a public school, resulting in an inability to tuition their children at the state's expense to the schools of their choice while parents living in districts that do not have a public school have school choice through tuitioning. Parents assert that their lack of school choice, while parents in tuitioning districts have school choice, violates the Education and Common Benefits Clauses of the Vermont Constitution. See Vt. Const. ch. II, § 68; id. ch. I, art. 7.

¶ 5. The State Defendants filed a motion to dismiss parents' complaint for failure to state a claim upon which relief could be granted. Following a hearing, the civil division granted the State Defendants' motion to dismiss, concluding that parents failed to allege an adequate facial challenge to the statutes for violation of the Education Clause or the Common Benefits Clause. This appeal followed.

¶ 6. Before this Court, parents argue that the trial court erred when it granted the State Defendants' motion to dismiss. They propose that under the Common Benefits Clause, the State Defendants must establish the interests the state seeks to achieve via the challenged law on the record and therefore the complaint cannot be dismissed because there is no legitimate governmental interest to justify the law at this point in the litigation. Under the Education Clause, they argue that discrimination in educational opportunity on the basis of locality is prohibited and that any law allegedly impinging on the right to education is subject to strict scrutiny. Parents also propose that their Education Clause cause of action must proceed because the State Defendants must justify the state's "geographically discriminatory education policy" on the record. The State Defendants maintain that the Vermont Constitution does not require the universal tuitioning system parents seek. It opposes parents' contention that the state must establish on the record the

_____

[3] There is no doubt parents may send their children to the independent schools they desire at their own expense.

4

interests it seeks to achieve with a statute in order to successfully dismiss a facial constitutional challenge. It also argues that intermediate scrutiny applies to parents' constitutional challenges and that the tuitioning statutes pass constitutional muster under this standard.

¶ 7. We review de novo motions to dismiss for failure to state a claim. Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009. "The facial constitutionality of a statute is a legal question that we review without deference." State v. Noll, 2018 VT 106, ¶ 21, 208 Vt. 474, 199 A.3d 1054. "To avoid an unconstitutional reach of the judiciary's own powers as a co-equal branch of government, this Court presumes a statute is constitutional absent clear and irrefragable evidence to the contrary." Athens Sch. Dist. v. Vt. State Bd. of Educ., 2020 VT 52, ¶ 37, 212 Vt. 455, 237 A.3d 671 (quotation omitted).

¶ 8. We begin by setting forth the legal framework for evaluating parents' claims under the Education Clause and Common Benefits Clause of the Vermont Constitution. Once we clarify the proper standards, we assess the contents of the complaint to determine whether parents have alleged facts sufficient to state a claim upon which relief can be granted. We conclude that they have not and accordingly affirm the trial court's dismissal.

## I. Legal Framework

¶ 9. Parents' arguments draw on various constitutional concepts but intermingle them. It is necessary that we clarify the framework for analyzing their claims. We divide our analysis into two parts. First, we address parents' argument under the framework of an equal-educational-opportunity claim. To do so, we analyze Vermont children's right to education under the Education Clause and under the Common Benefits Clause of the Vermont Constitution. We conclude that Vermont children do not have a right to attend the school of their parents' choice at the state's expense under the Education Clause. Considering the Common Benefits Clause, we conclude that in order to have a viable legal claim for denial of equal educational opportunities, parents must show that providing school choice at the state's expense leads to a substantial

5

difference in educational opportunities. Second, we address parents' claim under the framework of a more general argument that the state has denied parents' children of a common benefit in violation of the Vermont Constitution and conclude that parents must allege facts sufficient to satisfy a three-part test to make a prima facie case for such violation.

### A. Equal Educational Opportunity

¶ 10. This Court's landmark decision in Brigham v. State (Brigham I), 166 Vt. 246, 692 A.2d 384 (1997) (per curiam), provides the framework to guide our evaluation of parents' equal-educational-opportunity claim. There we held that, under the Education Clause and Common Benefits Clause of the Vermont Constitution, "the state must ensure substantial equality of educational opportunity throughout Vermont." Id. at 268, 692 A.2d at 397. We decided that the then-existing system for funding public education in Vermont, which relied substantially on property taxes and undisputedly resulted in wide disparities in student expenditures between school districts, deprived children of the equal educational opportunity guaranteed to them under the Vermont Constitution. Id. at 249, 692 A.2d at 385. To reach this conclusion, the Court first discussed the right to education in Vermont under the Education Clause and then examined the right to equal educational opportunities under the Common Benefits Clause. We follow that same path here to analyze parents' arguments regarding the Vermont Constitution's educational guarantees.

¶ 11. We expressly hold now what has only been implicit before: Vermont children have a fundamental right to education under the Education Clause of the Vermont Constitution.[4] In Brigham I, we held that education is "a fundamental obligation of state government." 166 Vt. at 264, 692 A.2d at 395. The mirror to the government's "fundamental obligation" to provide for education is Vermont children's fundamental right to that education. As we stated in Brigham I,

---

[4] We have previously stated as such, albeit as dictum. See State v. Vasseur, 2021 VT 53, ¶ 2, 215 Vt. 224, 260 A.3d 1126 (citing Brigham I).

the right to education is "integral to our constitutional form of government, and its guarantees of political and civil rights." Brigham I, 166 Vt. at 256, 692 A.2d at 390. This Court meticulously detailed the enduring significance of the right to education in our political history, beginning with the framers' vision when they drafted the Education Clause, which enshrines "the only governmental service [they] considered worthy of constitutional status." Id. at 259, 692 A.2d at 391 (emphasis omitted). We also rejected arguments that education could not "be an individual right" under the Vermont Constitution. Id. at 262, 692 A.2d at 394. Accordingly, the analysis in Brigham I leaves no doubt that education is a fundamental and individual right of Vermont children.

¶ 12. The existence and importance of the right being established, we now turn to the scope of that right. Cf. State v. Irving Oil Corp., 2008 VT 42, ¶ 5, 183 Vt. 386, 955 A.2d 1098 (explaining that equitable actions fall outside Article 12 right to jury trial under Vermont Constitution); State v. Misch, 2021 VT 10, ¶ 47, 214 Vt. 309, 256 A.3d 519 (per curiam) (stating that right to bear arms under Article 16 of Vermont Constitution includes possession of firearms for self-defense but not for military use). After detailing the history and basis of the right to education, the Brigham I Court observed that the Education Clause "states in general terms the state's responsibility to provide for education, but is silent on the means to carry it out." 166 Vt. at 264, 692 A.2d at 395. Thus, the statutory scheme for funding schools at issue in that case was a "legislative means" to reach the state's obliged ends—meeting its constitutional duty to provide for education by maintaining a "competent number of schools . . . in each town." Id. (quoting Education Clause, Vt. Const. ch. II, § 68). We acknowledged that the methods appropriate for providing adequate educational opportunity may change over time, as those once sufficient "can and should be modified" if they no longer serve their intended purpose. Id.

¶ 13. In essence, neither the state nor Vermont children are entitled to one specific method of providing for education under the Education Clause. Providing school districts with

7

the choice between maintaining a public school, tuitioning, or some combination of the two is a "legislative means" to achieve the constitutional ends of maintaining a "competent number of schools . . . in each town unless the general assembly permits other provisions for the convenient instruction of youth." Vt. Const. ch. II, § 68. Within this framework, school choice itself is not an educational opportunity but rather a means to provide for educational opportunities. As such, school choice is permitted but not required by the Education Clause; there is no entitlement to school tuitioning at the state's expense derived from the Education Clause itself. Moreover, nowhere in Brigham I or in the text of the Education Clause can we find any support for parents' assertion that children are entitled to the education that "best fits" them at the state's expense. Cf. Brigham I, 166 Vt. at 267, 692 A.2d at 397 (eschewing idea that absolute equality of education funding is required). Lastly, this conclusion is consistent with our previous determination "that there is no constitutional right to be reimbursed by a public school district to attend a school chosen by a parent."[5] Mason v. Thetford Sch. Bd., 142 Vt. 495, 499, 457 A.2d 647, 649 (1983). In sum, the Education Clause does not require the state to provide Vermont children with school choice at its expense to meet its fundamental obligation to provide for education.[6]

¶ 14. The determination that Vermont children do not have a right to attend a school chosen by their parents at the state's expense under the Education Clause does not end our inquiry. After concluding that the Education Clause does not require specific methods to provide for education, the Brigham I Court tested whether the legislative methods selected treated Vermont children unequally in violation of the Common Benefits Clause. Brigham I, 166 Vt. at 265, 692

---

[5] The parties argue substantially about the extent to which the Court's statement in Mason is dictum and whether Brigham I implicitly overruled Mason. We need not address these arguments because they are immaterial here. The statement in Mason is consistent with Brigham I, and regardless of whether it is dictum, it correctly states the law post-Brigham I.

[6] Parents have at no point argued that the education Vermont children receive from public schools is so inadequate that the state has failed to meet its obligation to provide for education. In other words, we ascertain no challenge under the Education Clause itself here.

A.2d at 395. When doing so, the <u>Brigham I</u> Court took the significance of education, a government benefit codified in the Vermont Constitution, into account in its Common Benefits analysis and concluded that Vermont children have a right to "substantial equality of educational opportunity." <u>Id</u>. at 268, 692 A.2d at 397. From <u>Brigham I</u>'s equal-educational-opportunity analysis, we can derive two key principles pertinent to the case before us.

¶ 15. First, the Vermont Constitution's silence as to the means for providing education does not give the state free rein to select any method it wishes without judicial scrutiny. The state is ultimately responsible for inequities resulting from its chosen methods of providing for education. See <u>Brigham I</u>, 166 Vt. at 264, 692 A.2d at 395 ("They are choices made by the government of the State of Vermont, and choices for which it bears ultimate responsibility."). The constitutional obligation to provide for education rests with the state, not school districts or towns. <u>Id</u>. "The state may delegate to local towns and cities the authority to finance and administer the schools within their borders; it cannot, however, abdicate the basic responsibility for education by passing it on to local governments, which are themselves creations of the state." <u>Id</u>. We accordingly find no merit in the State Defendants' argument that parents have no equal-educational-opportunity claim because the statutes treat all school districts the same by allowing each district to decide whether to maintain public schools, tuition, or both. If the method the state selects to provide for education results in substantially different educational opportunities, the state is responsible for those inequities even if the statutes themselves seemingly treat all school districts the same.

¶ 16. Second, although <u>Brigham I</u> did not explicitly define educational opportunity, its reasoning provides us with guidance on what is included and therefore to what Vermont children must have substantially equal access. In <u>Brigham I</u>, it was undisputed that wide disparities in funding existed, these disparities correlated with local property wealth, and the result was the relatively wealthiest school districts spending twice as much per pupil as their relatively poorest

9

counterparts. The plaintiffs also alleged, and the state conceded, that disparities in funding resulted in relatively poorer school districts having fewer educational opportunities than relatively wealthier school districts. While the "precise nature of the educational 'opportunities' affected by the disparities" was immaterial, the unequal funding resulted in, at a minimum, "unequal curricular, technological, and human resources" such as the ability to "offer equivalent foreign language training, purchase equivalent computer technology, hire teachers and other professional personnel of equivalent training and experience, or provide equivalent salaries and benefits." 166 Vt. at 255, 692 A.2d at 389-90. Acknowledging that funding and educational opportunity are not one-to-one equivalents, there was still "no reasonable doubt that substantial funding differences significantly affect opportunities to learn." Id. at 255-56, 692 A.2d at 390.

¶ 17. Importantly, Brigham I did not hold that money is educational opportunity. Cf. Boyd v. State, 2022 VT 12, ¶ 14, __ Vt. __, 275 A.3d 155 (involving undisputed fact that more money would not have improved educational opportunities). In Brigham I, there was undisputed evidence of the link between funding and educational opportunity; however, this Court explicitly stated that "absolute equality of funding is neither a necessary nor a practical requirement." 166 Vt. at 268, 692 A.2d at 397. Some differences in funding are permissible due to each school district's different needs and costs, but a "system in which educational opportunity is necessarily a function of district wealth" is prohibited. Id. Similarly, here, we conclude that differences in the availability of school choice alone do not constitute a substantial inequality of educational opportunity. School choice via tuitioning is a means for school districts to publicly educate Vermont children in areas where it may not be feasible or practicable to maintain public schools for all grades; it is unlike the "unequal curricular, technological, and human resources" discussed in Brigham I. Id. at 255, 692 A.2d at 390. In the same way that the identification of differences in funding was not the end of the analysis in Brigham I, identification of differences in the availability of tuitioning cannot be the end of our analysis here. In order to succeed on their equal-

10

educational-opportunity claim, parents must show that school choice results in substantially different educational opportunities.[7]

¶ 18. The Education Clause does not require the state to provide school choice at its expense to meet its fundamental obligation to provide Vermont children with an education. School choice is a means to meet educational ends. In addition to providing an education, the state must provide children with substantial equality of educational opportunity under the Common Benefits Clause. Because school choice is not an educational opportunity itself, in order to state a claim for an equal-educational-opportunity violation under Brigham I, the allegations in parents' complaint must demonstrate that having school choice results in substantially better educational opportunities for Vermont children.

### B. Non-Educational Common Benefits Claim

¶ 19. Parents conceptualize Brigham I as an Education Clause case and accordingly conflate Education Clause and Common Benefits Clause analysis. As explained above, the Brigham I Court's inquiry was in two parts. The first part, under the Education Clause, described the state's fundamental obligation to provide for education. The second part, under the Common Benefits Clause, examined whether a law that implicated the state's fundamental obligation to provide for education and resulted in disparate treatment of Vermont schoolchildren based on their geographic location denied those schoolchildren of a common benefit. Brigham I provides the framework for analyzing a Common Benefits claim in a specific situation where the government benefit identified is education: substantial equality of educational opportunity. However, the

---

[7] Since Brigham I, we have not had occasion to assess when differences in educational opportunities constitute "substantial" inequality, and, because we conclude that school choice at the state's expense is not an educational opportunity, we need not do so here. We accordingly need not address parents' argument that statutes infringing the right to equal educational opportunity are subject to strict or heightened scrutiny. However, we note that the Brigham I Court did not explicitly rely on a particular level of judicial scrutiny when reaching its conclusion that the Vermont Constitution requires substantial equality of educational opportunity. See 166 Vt. at 265, 692 A.2d at 396 (stating that outcome does not "turn[] on the particular constitutional test to be employed").

Common Benefits Clause also applies to other types of benefits, including those not guaranteed in the Vermont Constitution. Therefore, even if the state is not required to provide a benefit, when it chooses to do so, it must comply with the Common Benefits Clause. See generally Vt. Const. ch. I, art. 7. Parents do raise a more general Common Benefits Clause argument for a benefit conferred that is not in itself an educational opportunity and therefore falls outside the scope of Brigham I's more specific analysis. We turn now to that general analysis.

¶ 20. The Common Benefits Clause "is intended to ensure that the benefits and protections conferred by the state are for the common benefit of the community and are not for the advantage of persons 'who are a part only of that community.' " Baker v. State, 170 Vt. 194, 212, 744 A.2d 864, 878 (1999) (quoting Vt. Const. ch. I, art. 7). The appropriate Common Benefits inquiry comes in three steps: a court must (1) define the part of the community disadvantaged by the legal requirement; (2) identify the governmental purpose in excluding a part of the community from the benefit; and (3) "ultimately ascertain whether the omission of a part of the community from the benefit, protection and security of the challenged law bears a reasonable and just relation to the governmental purpose." Id. at 212-14, 744 A.2d at 878-79. Under the third prong of this test, factors that may be considered include "(1) the significance of the benefits and protections of the challenged law; (2) whether the omission of members of the community from the benefits and protections of the challenged law promotes the government's stated goals; and (3) whether the [part of the community receiving the benefit] is significantly underinclusive or overinclusive." Id. at 214, 744 A.2d at 879. While weighing these factors, "courts must look to the history and traditions from which the [s]tate developed as well as those from which it broke." Id. (quotation omitted).

¶ 21. When conducting Common Benefits analysis, "statutes are presumed to be constitutional and we must accord deference to the policy choices made by the Legislature." Badgley v. Walton, 2010 VT 68, ¶ 38, 188 Vt. 367, 10 A.3d 469. For this reason, we reject parents'

contention, relying on the "core presumption of inclusion" embodied in the Common Benefits Clause, Baker, 170 Vt. at 214, 744 A.2d at 879, that it is the State Defendants' burden to prove why the state's exclusion of some citizens from the benefit is reasonable and just.[8] The inclusionary principle at the core of the text of the Common Benefits Clause is integrated into the test set forth in Baker; this Court has never held that it alters the presumption of constitutionality. Baker, 170 Vt. at 213, 744 A.2d at 878 (explaining that "relatively uniform standard" articulated therein is "reflective of the inclusionary principle"). It is the plaintiff's burden to demonstrate that a statute does not bear a reasonable and just relation to a governmental purpose and is therefore unconstitutional. See Badgley, 2010 VT 68, ¶ 20 (beginning Common Benefits analysis by emphasizing that "statutes are presumed to be constitutional" and observing that "proponent of a constitutional challenge has a very weighty burden to overcome"). To conclude otherwise would be to negate the presumption of constitutionality afforded to statutes and run contrary to our Common Benefits Clause precedent. See id. ¶ 42 (rejecting idea that state must rebut all evidence submitted by plaintiffs because doing so would place burden of proving constitutionality on state); see also, e.g., Vt. Hum. Rts. Comm'n v. State, Agency of Transp., 2012 VT 88, ¶ 12, 192 Vt. 552, 60 A.3d 702 (noting presumption of constitutionality and conducting Common Benefits analysis described in Baker). Parents' citation to a quote from Baker taken out of context and presented in isolation will not sway us to depart from our well-settled precedent.

¶ 22. The above framework is markedly different from analysis under the Equal Protection Clause of the U.S. Constitution. To analyze a claim under the Equal Protection Clause, courts employ a three-tiered analysis based on the nature of the right intruded upon or the class of

_____

[8] Parents cite our recitation of the standard for evaluating claims implicating fundamental rights under the Equal Protection Clause in support of its argument that this Court has held that the government has the burden to show statutes are constitutional under the Common Benefits Clause. It bears noting that in the very same paragraph parents cite, we "contrast" Equal Protection Clause analysis with Common Benefits Clause analysis. See In re C.L.S., 2021 VT 25, ¶ 29, 214 Vt. 379, 253 A.3d 433 (emphasis added). As we have repeated, equal-protection analysis and Common Benefits analysis are not synonymous.

13

person affected.  Baker, 170 Vt. at 202 n.3, 744 A.2d at 871 n.3 (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440-41 (1985)).  The level of judicial scrutiny applied to the challenged statute ranges from rational basis to strict scrutiny, the most exacting standard, and the test utilized differs based on the level of scrutiny.  Id. at 202 n.3, 204 n.5, 744 A.2d at 871 n.3, 872 n.5.  In Baker, we explicitly rejected "the rigid categories" applied in federal equal-protection cases in favor of the more flexible balancing approach set forth above, which is more consistent with the "language, history, and values at the core of the Common Benefits Clause."  Id. at 206, 744 A.2d at 873.

¶ 23.    In light of Baker, parents' Common Benefits Clause arguments invoking federal tiers of scrutiny applied in Equal Protection Clause cases are misguided.  Because Baker sets out a flexible standard, labels like "strict," "heightened," or "intermediate" scrutiny are entirely inapplicable.  Although the significance of the benefit from which members of the community are excluded is certainly integral to Common Benefits analysis, it does not change the test applied.  See Id. at 214, 744 A.2d at 879 (explicitly including significance of benefit as factor for determining whether omission of some members of community from benefit bears reasonable and just relation to governmental purpose).  For this reason, we may look to federal case law using tiered scrutiny analysis that we find to be persuasive for our Common Benefits analysis, but we have declined to adopt those labels and their accompanying tests.  We will not depart from our flexible standard today.

¶ 24.    Therefore, in order to state a Common Benefits claim, a complaint must contain allegations to satisfy the test set forth in Baker.  Thus, it is insufficient to assert that there is a law that results in some people having a benefit and others not, accompanied by the legal conclusion that this difference in treatment violates the Vermont Constitution.  The complaint must contain a "short and plain statement" that (1) defines the part of the community disadvantaged by the legal requirement; (2) identifies the governmental purpose, if any is known, in excluding a part of the

14

community from the benefit[9]; and (3) explains how the omission of a part of the community from the benefit does not bear a reasonable and just relation to a governmental purpose identified. See V.R.C.P. 8(a) (requiring pleadings to contain "short and plain statement" showing "pleader is entitled to relief"); see also Vt. Hum. Rts. Comm'n, 2012 VT 88, ¶¶ 11-15 (concluding based on pleadings that application of statute of limitations did not violate Common Benefits Clause because Court could not identify part of community denied benefit, and affirming dismissal of complaint for failure to comply with limitations period); Quinlan v. Five-Town Health All., Inc., 2018 VT 53, ¶¶ 23-25, 207 Vt. 503, 192 A.3d 390 (same).

¶ 25. In conclusion, we reject parents' invitation to apply "strict" or "heightened" scrutiny to their Common Benefits Clause claim and instead reaffirm the flexible standard set forth in Baker. To state a claim for a Common Benefits Clause violation under Baker, a complaint must demonstrate, on its face, that the challenged law excluding some part of the community from a government benefit does not bear a reasonable and just relation to a governmental purpose.

## II. Application to Complaint

¶ 26. Having clarified the legal framework for parents' claims, we turn to the complaint to evaluate whether it states a claim upon which relief can be granted. Parents argue that the State Defendants' motion to dismiss cannot be granted because the State Defendants need to put on evidence to demonstrate the statutes' constitutionality, including by establishing the state's purpose in creating the statutory framework on the record. In effect, parents posit that it is "usually impossible for a judge to rule on a Common Benefits claim at the motion-to-dismiss stage because

---

[9] Sometimes the Legislature states a governmental purpose in a statute. There may also be legislative history publicly available. However, we by no means require the pleadings to conduct a deep dive into legislative purpose and acknowledge that a plaintiff may not be able to obtain information sufficient to definitively identify a specific governmental purpose pre-discovery. Cf. Brigham I, 166 Vt. at 265, 692 A.2d at 396 (involving "gross inequities" for which Court could not "fathom a legitimate governmental purpose to justify" them); Badgley, 2010 VT 68, ¶ 40 (analyzing Common Benefits claim where no evidence of legislative record was available and relying instead on public debate).

the elements of the test under that claim require the development of a factual record before summary judgment or trial." In their view, once they have pleaded allegations sufficient to support a claim, they must support their claim with evidence of the constitutional violation, and that the burden then shifts to the State Defendants to prove that the law survives the appropriate level of judicial scrutiny. The State Defendants first propose that parents' burden-shifting argument is not preserved and then argues that it is parents' burden to demonstrate that the statutes are unconstitutional and that as a matter of law their complaint fails to state a claim that does so.

¶ 27. We do not reach parents' arguments regarding "burden shifting" when litigating Common Benefits claims or the State Defendants' preservation argument.[10] Simply put, we review the allegations contained in parents' complaint and apply them to the legal standards articulated above to see if parents have set out a prima facie case. We conclude that they have not.

¶ 28. "A motion [to dismiss] for failure to state a claim may not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Boland v. Est. of Smith, 2020 VT 51, ¶ 5, 212 Vt. 386, 237 A.3d 723 (quotation omitted). In reviewing disposition of a motion to dismiss, we "assume as true all factual allegations" and accept "[a]ll reasonable inferences that can be drawn" from the complaint. Amiot v. Ames, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997). The purpose of a Rule 12(b)(6) motion is to ensure the pleading "gives fair notice of the claim and the grounds upon which it rests." Bressler v. Keller, 139 Vt. 401, 403, 429 A.2d 1306, 1307 (1981). However, we are not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 10, 184 Vt. 1, 955 A.2d 1082 (quotation omitted). In sum, our aim is to determine "whether the bare allegations of the complaint are sufficient to state a claim." Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.).

---

[10] To the extent parents' burden-shifting argument is premised on the idea that statutes are not presumed to be constitutional when the Common Benefits Clause is implicated, we have already rejected that argument above. Supra, ¶ 21.

¶ 29. The requirement that the complaint contain allegations sufficient to "show that the pleader is entitled to relief" applies in cases involving Common Benefits Clause challenges, whether brought under Brigham I or under Baker. V.R.C.P. 8(a). As explained above, statutes carry a presumption of reasonableness and of constitutionality. Badgley, 2010 VT 68, ¶ 20. These presumptions are not inconsistent with our Rule 12(b)(6) standard, which is notably permissive. See Mahoney v. Tara, LLC, 2014 VT 90, ¶ 15, 197 Vt. 412, 107 A.3d 887 (noting our "extremely liberal notice-pleading standard"). To explain how these standards work together, a Seventh Circuit opinion discussing rational-basis review of an equal-protection claim at the pleadings stage is instructive:

> The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations. The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim. While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts" in light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.

Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir. 1992) (quotation omitted).[11]

---

[11] Wroblewski predates federal courts' shift to a heightened pleading standard and is accordingly instructive for our own pleading standard. See generally Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). Further, although we cite Wroblewski to draw an analogy for our own Common Benefits analysis at the pleadings stage, we in no way adopt federal courts' requirements specific to the rational-basis standard. See, e.g., Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008) (holding that plaintiff must "negate every conceivable basis which might support the legislation" challenged).

¶ 30. We do not apply rational-basis review here; however, the Seventh Circuit's reasoning can be translated to fit Vermont standards. See Badgley, 2010 VT 68, ¶¶ 38-39 (looking to federal precedent discussing rational-basis review under Equal Protection Clause and following modified approach appropriate for Common Benefits Clause analysis without adopting rational-basis review). Parents' claims should neither survive nor fail on a Rule 12(b)(6) motion to dismiss merely because the Common Benefits Clause is invoked. The presumptions in favor of reasonableness and constitutionality and the tests set forth in Brigham I and Baker are substantive while the Rule 12(b)(6) standard is procedural. At the pleadings stage, we test the law of the claim by taking as true all of the complaint's allegations and reasonable inferences that can be drawn therefrom and applying them to the substantive legal standard at issue. Kaplan, 2009 VT 78, ¶ 7.

¶ 31. Accordingly, if the complaint sets forth allegations that make out a prima facie case for a Common Benefits Clause violation, then parents have stated a claim and are entitled to move forward to discovery in order to attempt to prove their case. If they fail to make out a prima facie case, they are not entitled to move forward in the litigation process. See Colby, 2008 VT 20, ¶ 10 (affirming refusal to amend complaint to add claim where complaint lacked any facts to support new claim). To make out a prima facie case, a complaint must articulate how a statute is unconstitutional under the applicable substantive standard. See Schievella v. Dep't of Taxes, 171 Vt. 591, 592, 765 A.2d 479, 480 (2000) (mem.) (explaining that "[a]lthough we normally are reluctant to dismiss a cause of action on the pleadings, . . . plaintiffs face a heavy burden because they must overcome the presumption that the law is constitutional"); see also Shell Island Homeowners Ass'n v. Tomlinson, 517 S.E.2d 406, 417 (N.C. Ct. App. 1999) (affirming dismissal of equal-protection claim where, applying facts alleged in complaint, challenged statute bore rational relation to legitimate government interest).

¶ 32. Requiring plaintiffs to show how a statute is unconstitutional is not a heightened procedural burden. See V.R.C.P. 8(a) (requiring pleading to show that plaintiff is entitled to relief).

It merely ensures that the state has fair notice of the claims against it and the grounds upon which those claims rest so that it can begin to formulate its defense. Bressler, 139 Vt. at 403, 429 A.2d at 1307. It is also consistent with our requirement that complaints contain more than "conclusory allegations or legal conclusions masquerading as factual conclusions." Rodrigue v. Illuzzi, 2022 VT 9, ¶ 33, __ Vt. __, 278 A.3d 980 (quotation omitted).

¶ 33. Above, we detailed the prima facie cases required to state a claim under Brigham I and under Baker. Our task now is to look exclusively to the complaint to assess whether its allegations are sufficient to state a claim under either or both legal standards. In furtherance of this task, we briefly restate pertinent allegations here.

¶ 34. The complaint states that "[a]llowing some Vermont children to attend the school of their choice while denying this common benefit to other children" violates the Vermont Constitution. It also proposes that "[t]he fact that some children may attend a potentially minimally adequate public school for free does not excuse the state from providing equal educational opportunities to all children," such as tuitioning. Beyond these broad statements, it goes into detail about the personal educational experiences of parents' children, concluding that for each of these eight children there has been a dissatisfaction with the public schools in their respective school districts and that they either have benefited or would benefit from attending an independent school. It states that the fact that some children attend independent schools "for free" while others have to pay is "inherently unequal."

A. Equal Educational Opportunity

¶ 35. Taking the facts alleged in the complaint as true, parents have not adequately alleged that the current statutory framework, which allows some children to have school choice at the state's expense via tuitioning and other children to not have school choice except at parents' expense, results in substantial inequality of educational opportunities. The complaint erroneously assumes that school choice is an educational right or educational opportunity. However, as we

19

articulated above, school choice is but a means to provide for education. Supra, ¶ 17. In order to establish a prima facie case and succeed on their claim under Brigham I, parents needed to allege that school choice leads to substantial inequality of educational opportunities. Supra, ¶ 18. They did not do so here.

¶ 36. Our precedents support dismissing equal-educational-opportunity claims that fail to connect legislative means with differences in educational opportunities. In State v. Vasseur, we identified that the link between funding and educational opportunities was integral to the claims in Brigham I. 2021 VT 53, ¶ 13. We concluded that the plaintiff, who sought to challenge differences in town representation on school boards, did not have standing because he failed to allege an injury in fact. Id. ¶ 11; see also Ferry v. City of Montpelier, 2023 VT 4, ¶ 13, __ Vt. __, __ A.3d __ (explaining that injury for purpose of standing analysis is separate from but "closely related" to merits (quotation omitted)). We explained that the plaintiff failed to allege any link between differences in school-board representation and differences in educational opportunities and that the alleged injury was therefore entirely different from and inadequate when compared to Brigham I. 2021 VT 53, ¶ 13.

¶ 37. The importance of linking allegedly deficient legislative means with differences in educational opportunities arose again a year later in Boyd v. State, 2022 VT 12. There, the plaintiff challenged Vermont's education-funding statutes, arguing that they deprived children of equal educational opportunities by pointing to differences in the number of courses available and college preparatory testing statistics at two schools in particular. Assuming, without deciding, that the differences identified constituted substantial inequality of educational opportunities, we determined that the plaintiffs failed to demonstrate that the challenged funding system caused the alleged differences in educational opportunities because it was undisputed that more spending would not have created higher levels of educational opportunity at the school with fewer courses

20

and lower test scores. Id. ¶ 25. We accordingly affirmed the trial court's grant of summary judgment to the defendants. Id. ¶ 1.

¶ 38. Contrast those two examples with the legally cognizable claims in Brigham I and Brigham v. State (Brigham II), 2005 VT 105, 179 Vt. 525, 889 A.2d 715 (mem.). In Brigham I, there was uncontroverted evidence that then-existing disparities in funding led to fewer educational opportunities for some students, including but not limited to "unequal curricular, technological, and human resources." 166 Vt. at 255, 692 A.2d at 390. There was "no reasonable doubt that substantial funding differences significantly affect opportunities to learn." Id. at 256, 692 A.2d at 390. In Brigham II, the plaintiffs alleged in their complaint that their school had substantially fewer curricular choices compared to other schools and that this disparity was caused by inadequate funding. 2005 VT 105, ¶ 13. We concluded that these allegations were sufficient to survive a motion to dismiss under a Rule 12(b)(6) standard. Id. The complaint here does not allege facts to create a logical chain comparable to that in Brigham II. Parents' failure to allege facts to connect school choice with better educational opportunities is fatal to their claim.

¶ 39. Nor can their assertions of their children's experiences save their claim. Parents repeatedly claim that their legal challenge is on behalf of all Vermont children and that their children's stories are "only to establish standing and as anecdotal evidence for why town tuitioning is the type of benefit that affects educational outcomes." Significantly, parents do not make any allegation in the complaint that their children's experiences are evidence of why tuitioning is the type of benefit that affects educational outcomes. Even taking their children's stories as true, they are insufficient to support a facial claim on behalf of all Vermont children. It is not reasonable to infer from the experiences of eight children from three families who benefited from or thought they would benefit from tuitioning that there is a factual link between town tuitioning and educational outcomes for all or even a substantial portion of Vermont children. It is also not

21

reasonable to infer, absent any allegation, that if such a link exists, it causes "<u>substantial</u>" inequality of educational outcomes. Brigham I, 166 Vt. at 268, 692 A.2d at 397.

¶ 40. Because this is a facial challenge, parents need to allege more than individualized stories about three families' experiences with their public schools failing to meet what they assert are their children's needs. See Mountain Top Inn & Resort, 2020 VT 57, ¶ 22 (explaining that facial challenge requires proponent to demonstrate that statute should be invalidated in contrast to as-applied challenges that provide remedies only as to individual facts of case). They concede as much in their principal brief, acknowledging that they "have the responsibility . . . to introduce additional evidence as to the broader impact of tuitioning on Vermont families and communities." However, when tested under the requirements of Vermont Rule of Civil Procedure 12(b)(6), they do not get to prove what they failed to plead; the complaint is simply insufficient to state a claim upon which relief could be granted.

## B. Non-Educational Common Benefits Claim

¶ 41. The complaint also does not set forth a prima facie case for a violation of the Common Benefits Clause where the benefit identified is not educational opportunity. As explained above, Brigham I provides the test for an equal-educational-opportunity challenges specifically, and Baker provides the test for other types of Common Benefits claims. To establish a prima facie case for denial of a common benefit in violation of the Common Benefits Clause under Baker, the complaint must allege facts sufficient to (1) define the part of the community disadvantaged by the legal requirement; (2) identify the governmental purpose, if any is known, in excluding a part of the community from the benefit; and (3) state how the omission of a part of the community from the benefit does not bear a reasonable and just relation to the governmental purpose identified. Supra, ¶ 24.

¶ 42. First, we look to see if the complaint defines a part of the community denied a benefit. The complaint certainly does allege that some parents are able to have their children attend

22

the school of their choice at the state's expense while other parents cannot. However, it is important to note that parents live in school districts that have chosen not to tuition and instead to maintain a public school. The statutes permit school districts to decide locally whether to maintain a public school, to pay tuition, or some combination of the two. 16 V.S.A. §§ 821(a)(1), 822(a)(1). We have previously held that a set of plaintiffs failed to identify a part of the community denied a benefit when challenging a limitations period placed on an entity's ability to sue the state, noting that the statute did not actually prevent suit against the state. See Vt. Hum. Rts. Comm'n, 2012 VT 88, ¶ 31. Similarly, we concluded that a plaintiff challenging a statute of limitations failed to identify a part of the community denied a benefit because the plaintiff's inability to pursue the time-barred claim was due to their own inadvertence rather than operation of the statute. See Quinlan, 2018 VT 53, ¶ 24. Parents are presumably voters in their non-tuitioning school districts and could use the electoral process to change their local status. However, as noted above, in the education context, the state is responsible for resulting inequities even if educational statutes seemingly treat all school districts the same. Supra, ¶ 15. It is unclear to what extent the state is liable for the disparate impacts of a facially neutral statute under Baker. Parents' briefing does not resolve this tension in our precedent, and we need not resolve it today. Assuming, without deciding, that the complaint identifies a part of the community denied a benefit, we move on to the next steps in the analysis.

¶ 43. The complaint does not identify the governmental purpose or purposes the challenged statutes are meant to achieve, nor does it allege that the state has no identifiable purpose publicly available at this time. Blanket statements that the state could have no conceivable purpose for passing a challenged statute should be made with caution. Although a plaintiff is by no means required to speculate as to arguments the government might raise in favor of constitutionality, one cannot ignore publicly available statements of legislative intent for purposes of surviving a motion to dismiss. See Kaplan, 2009 VT 78, ¶ 10 n.4 ("[I]t is well settled that, in ruling on a Rule 12(b)(6)

motion to dismiss, courts may properly consider matters subject to judicial notice, such as statutes and regulations, and matters of public record."). For example, the Legislature has explained at least one purpose of the challenged tuitioning scheme here:

> To keep Vermont's democracy competitive and thriving, Vermont students must be afforded substantially equal access to a quality basic education. However, one of the strengths of Vermont's education system lies in its rich diversity and the ability for each local school district to adapt its educational program to local needs and desires. Therefore, it is the policy of the [s]tate that all Vermont children will be afforded educational opportunities that are substantially equal although educational programs may vary from district to district.

16 V.S.A. § 1. Accordingly, despite the complaint's failure to identify a governmental purpose, there is sufficient information to satisfy the second part of the Baker test.

¶ 44. Lastly, the complaint fails to allege that the statutes challenged are unreasonable or unjust in light of their governmental purpose and accordingly does not allege facts to demonstrate how the statutes are unreasonable or unjust. Similar to our discussion above, the three families' stories accompanied by a statement that the statutes are "inherently unequal" and "patently unfair" does not suffice. See Rodrigue, 2022 VT 9, ¶ 33 (explaining that we are not required to accept conclusory allegations as true). The complaint does not explain how the statute is unreasonable or unjust under the law, especially when judged in relation to a governmental purpose like providing quality education while adapting to local needs and desires. See 16 V.S.A. § 1 (stating purpose of education statutes).[12] Although parents attempt to make arguments under this prong of

---

[12] Parents assert that local control is not a legitimate governmental interest that can justify unequal educational opportunities. First, as we have explained quite thoroughly throughout this opinion, school choice is not an educational opportunity. However, we also note that parents misread Brigham I. There, the Court explained that the then-existing inequality of educational opportunities was so severe that no governmental interest could justify it. 166 Vt. at 265, 692 A.2d at 396. The Court acknowledged that local control was a "laudable goal" but identified that, on the facts of the case before it, there was no explanation as to why the funding system at issue was necessary to foster local control. Id. at 265-66, 692 A.2d at 396. An extrapolation from those statements that local control can never be a valid governmental interest when education is implicated in any sense in a Common Benefits Clause case is logically untenable.

24

the test after the fact, citing various studies, they did not do so in the complaint itself, and we do not look beyond the pleadings at facts not subject to judicial notice.  See In re Russo, 2013 VT 35, ¶ 16 n.4, 193 Vt. 594, 72 A.3d 900 (acknowledging courts' ability to take judicial notice of things like court documents when assessing motion to dismiss); V.R.E. 201(b) (defining judicially noticeable facts as those not subject to reasonable dispute).  The complaint contains very little to discern how the statutes are unreasonable or unfair in light of the government's stated purpose to provide quality education while adapting to local needs and desires.

¶ 45.    In sum, when we look past personal experiences and legal conclusions, as we must, parents' complaint does not contain allegations sufficient to show that the challenged statues violate the Common Benefits Clause.

### III.  Conclusion

¶ 46.    Although the Education Clause and the state's fundamental obligation to provide for education is relevant, parents do not make out an Education Clause claim.  As a matter of law, the Education Clause does not require the state to pay for Vermont children to attend the school of their parents' choice.  Parents do raise two Common Benefits claims; one specific and one general. The more specific claim is that the tuitioning statutes challenged in this case deprive Vermont children of equal educational opportunities in violation of our holding in Brigham I.  Under Brigham I, the state may select any appropriate means to provide Vermont children with an education, but the means selected must provide Vermont children with substantially equal educational opportunities.  The more general claim is that tuitioning is a government benefit provided only to some families in violation of the Common Benefits Clause under the three-part standard articulated in Baker.  Under Baker, a plaintiff must identify that there is a part of the community denied a benefit and show how this denial is not reasonable and just considering the governmental purpose in creating the challenged law.

¶ 47. The complaint is comprised of conclusory allegations that statutes permitting some parents of children to have school choice while other parents of children do not have school choice violate the Common Benefits Clause. See Aranoff v. Bryan, 153 Vt. 59, 62-63, 569 A.2d 466, 468 (1989) (distinguishing between factual allegations and questions of law); Rodrigue, 2022 VT 9, ¶ 33 (stating Court does not accept conclusory allegations or legal conclusions as true). The complaint fails to make out a prima facie case under the standards articulated in Brigham I and in Baker. We accordingly conclude that parents have failed to state a claim for an equal-educational-opportunity or other Common Benefits violation.

¶ 48. Our conclusion in this case does not end the evolution of the debate over how the state should educate Vermont children. It also does not foreclose the possibility that a plaintiff could bring a challenge that satisfies the legal standards stated in this opinion. When we review legal questions, we are limited to the controversy before us. See Badgley, 2010 VT 68, ¶ 41 (explaining that changing facts may affect viability of Common Benefits Clause challenge and limiting decision to "this time and on this record"). When assessing whether pleadings state a claim upon which relief can be granted, we are further limited to the allegations therein and reasonable inferences that can be drawn from those allegations. Kaplan, 2009 VT 78, ¶ 7. We simply conclude that what parents have alleged here is not enough to state a claim for a violation of the Education Clause or Common Benefits Clause of the Vermont Constitution.

Affirmed.

FOR THE COURT:

_____
Associate Justice

26