Vermont Superior Court
Filed 04/24/24
Windham Unit

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03359

| Crystal Corriveau et al v. Town of Windham et al |
| --- |

# ENTRY REGARDING MOTION

Title: Motion to Dismiss; Motion to Dismiss; Motion to Dismiss; Motion to Dismiss; Motion to Dismiss; Motion to Dismiss (Motion: 5; 6; 12; 13; 18; 19)
Filer: Kevin L. Kite; Sean M. Toohey; Kate T. Gallagher; Kevin L. Kite; Kate T. Gallagher; Kevin L. Kite
Filed Date: September 11, 2023; October 06, 2023; November 17, 2023; November 20, 2023; February 01, 2024; February 01, 2024

This is a civil action where Plaintiffs—parents of elementary school-aged children who reside in the Windham School District—seek redress for violations of their children's fundamental constitutional right to education under the Education Clause of the Vermont Constitution and to substantially equal educational opportunity under the Common Benefits Clause. The complaint names the State of Vermont ("State Defendant"), Town of Windham ("Town Defendant"), Windham Central Supervisory Union, and Windham School District ("School Defendants") as Defendants.

Before the court are Defendants' motions to dismiss Plaintiffs' fourth amended complaint on all counts pursuant to V.R.C.P. 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. The three-count complaint alleges: (1) a violation of the Education Clause of the Vermont Constitution (Count I); (2) a violation of the Common Benefits Clause of the Vermont Constitution (Count II); and (3) "preliminary and permanent injunction" (Count III). Plaintiffs generally oppose the motions. For the following reasons, the motions are GRANTED IN PART.

## A. BACKGROUND

### i. Relevant procedural history

On August 4, 2023, Plaintiffs initiated the instant suit against the Town of Windham and the State of Vermont. Their two-count complaint alleged (1) in Count I that "denying Windham schoolchildren town tuitioning violates their constitutional right to substantially equal educational opportunity afforded other Vermont schoolchildren who have the benefit of town tuitioning[;]" and (2) in Count II requested a preliminary and permanent injunction ordering Defendants to provide town tuitioning to Plaintiffs' children. Original Compl., at ¶ 131 *et seq.* The original complaint was accompanied by an expedited motion for preliminary and permanent injunction and a request for an

expedited hearing.  On August 31, 2023, this court denied Plaintiffs' motion for preliminary injunction, ruling that Plaintiffs had not met their burden of persuasion. See Entry Regarding Motion (filed Aug. 31, 2023).

On October 25, 2023, Plaintiffs filed a motion to amend their original complaint due to "substantial factual changes since the first complaint was filed." Mot. to Amend (filed Oct. 25, 2023) at ¶ 3.  On November 3, 2023, Plaintiffs filed a motion to amend the first amended complaint due to "additional substantial factual changes." Mot. to Amend (filed Nov. 3, 2023) at ¶ 3.  This court granted both motions to amend. See Entry Regarding Motion (filed Nov. 3, 2023).  On December 1, 2023, Plaintiffs filed an assented motion to amend the second amended complaint which sought to "add the Windham School District as a Defendant." Mot to Amend (filed Dec. 1, 2023) at ¶ 1.  This court granted that motion. See Entry Regarding Motion (filed Dec. 6, 2023).  On January 14, 2024, Plaintiffs filed a motion to amend the third amended complaint, citing, again, "substantial factual changes." Mot. to Amend (filed Jan. 14, 2024) at ¶ 3.  This court, again, granted that motion. See Entry Regarding Motion (filed Jan. 18, 2024).

Since the commencement of the proceedings in the instant matter, each Defendant has filed a separate motion to dismiss each of Plaintiffs' amended complaints. See Def. Town Mot. to Dismiss (filed Sep. 11, 2023); Def. State of Vermont Mot. to Dismiss (filed Oct. 6, 2023); Def. Town Mot. to Dismiss Second Amended Compl. (filed Nov. 17, 2023); Def. State of Vermont Mot. to Dismiss Second Amended Compl. (filed Nov. 20, 2023); Def. Windham School Dist. Mot. to Dismiss (filed Feb. 1, 2023).  The record also contains a plethora of responses, replies, sur-replies, exhibits, and various other non-dispositive motions from virtually all involved parties.  On January 18, 2024, this court ordered that "[a]ll previously filed dispositive motions, responses and replies will be reviewed and incorporated into resolution of case dispositive motions involving the fourth amended complaint." See Scheduling/Entry Order (filed Jan. 18, 2024).  Importantly for the present purposes, before the court now are Defendants' motions to dismiss Plaintiffs' fourth amended complaint.

**ii. Fourth Amended Complaint**

Plaintiffs filed their fourth amended complaint on January 14, 2024.  The complaint's introductory portion begins by citing *Vitale v. Bellows Falls Union High Sch*, 2023 VT 15, ¶ 11 for the proposition that "under the Vermont constitution, education is a 'fundamental constitutional right' of each Vermont school child." Fourth Amended Compl., at p. 1.  It subsequently goes on to explain that

> [i]n Vermont, some school children have the benefit of Vermont's school choice method of providing the fundamental right of education, called 'town tuitioning,' where a local town provides tuition on behalf of each school child, paid to the public school or accredited or approved independent school of his or her parent's choice.

*Id*. at p. 2.  The complaint also explains that Plaintiffs' children "are required to attend the local Windham Elementary School where educational opportunities are substantially diminished compared to students who enjoy town tuitioning[,]" and "[t]hat substantial lack of educational opportunity violates

the Vermont constitution and can only be remedied by an injunction ordering the Defendants to provide town tuition to the educational institutions that plaintiffs choose on behalf of their children." *Id*.

The complaint unequivocally states that it was "brought under V.R.C.P. 75." Fourth Amended Compl., at ¶ 10. It also announces categorically that "[s]ection 821(c) of Title 16 does not apply" to the instant matter because "[P]laintiffs in this complaint are either not nearer another school compared to Windham Elementary School, as required by Section 821(c), or are not seeking to have their children attend a school in an adjacent community." *Id*., at ¶ 15.

In Count I, the complaint alleges a violation of the Education Clause of the Vermont Constitution. *Id*., at ¶¶ 143–47. To support the allegation, the complaint cites 16 V.S.A. § 821 and the Vermont Supreme Court in *Vitale* for the proposition that "Vermont children have a fundamental constitutional right to an education under the Education Clause of the Vermont [C]onstitution." *Id*., at ¶¶ 144–45. In the 'bipartite'[1] Count II, the complaint alleges a violation of the Common Benefits Clause of the Vermont Constitution. *Id*., at ¶¶ 148–58. The complaint, again, cites *Vitale* for the proposition that "[p]roviding school choice for some Vermont children, but not to Plaintiffs' children results in a 'substantial difference in educational opportunities' when comparing Plaintiffs' children and those children who receive the town tuitioning method of state provided education." *Id*., at ¶ 151 (quoting *Vitale*, 2023 VT 15, ¶ 9). It concludes that "denying Windham schoolchildren town tuitioning violates their constitutional right to substantially equal educational opportunity afforded other Vermont schoolchildren who have the benefit of town tuitioning." *Id*., at ¶ 156. The second element of Plaintiffs' 'bipartite' Count II alleges that "retaliatory conduct by the Defendants in refusing to pay tuition to four plaintiff families for the Mountain School, where their children have attended since August, 2023, violates the Common Benefits Clause under the factors outlined in *In re Town Highway No. 20*[, 2012 VT 17, 191 Vt. 231.]" *Id*., at ¶ 157. Lastly, and quite curiously, Count III is styled as "Preliminary and Permanent Injunction[;]" both equitable *remedies*. *Id*., at ¶¶ 159–62; see also e.g., *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable remedy."); 13 V.S.A. § 2606(e)(2) (explicitly listing "a preliminary injunction" and "a permanent injunction" as equitable forms of *relief*).

The complaint concludes by highlighting that Plaintiffs are requesting this court (1) "[d]eclare that Defendants are violating the Plaintiffs' children their rights under the Vermont Constitution by not affording them a substantially equal educational opportunity afforded other Vermont schoolchildren, for no legitimate governmental purpose[;]" (2) "[i]ssue a preliminary and permanent injunction ordering the Defendants to provide town tuitioning to Plaintiff[]s['] children[;]" (3) "[a]ward damages to Plaintiffs who have been forced to pay tuition or provide the equivalent of services to the schools their children are attending, in order that their children receive a quality basic education, and substantially equal educational opportunity[;]" and (4) "[a]ward damages to the Plaintiffs who remained at Windham

---

[1] The complaint makes it clear that Plaintiffs' Count II, without separating into two respective counts, encompasses both their claim that "[p]roviding school choice for some Vermont children, but not to Plaintiffs' children" is a violation of the Common Benefits Clause, and a seemingly separate, but related claim that "retaliatory conduct by the Defendants in refusing to pay tuition to four plaintiff families for the Mountain School, where their children have attended since August, 2023, violates the Common Benefits Clause." Fourth Amended Compl., at ¶¶ 151 and 157.

during the fall semester 2023, and who suffered loss of a basic education, and loss of substantially [e]qual educational opportunity, as a result." Fourth Amended Compl., at pp. 32–33.

### iii. State Defendant's Motion to Dismiss

State Defendant has moved to dismiss Plaintiffs' complaint on all counts pursuant to V.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion argues that the complaint should be dismissed, *inter alia*, because the decision of the Vermont Agency of Education to approve the Windham School Board's decision to tuition the Windham students to Townshend School is not reviewable by this court under V.R.C.P. 75; because they have failed to state a claim for relief under the Education Clause as they have not alleged facts that could show the tuitioning statute has created unequal educational opportunities; because they have not alleged facts showing they are disadvantaged by the tuitioning statute and the goal of local control bears a just and reasonable relationship to that statute; because they have not stated a Common Benefits Clause violation under *Town Highway* that would entitle them to an injunction tuitioning the students to the Mountain School; and because they cannot recover money damages based upon an alleged past violation of the Common Benefits or Education clauses.

### iv. Town Defendant's Motion to Dismiss

Town Defendant has moved to dismiss Plaintiffs' complaint on all counts pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, V.R.C.P. 12(b)(1) for lack of subject matter jurisdiction over the case. The motion argues that the complaint should be dismissed, *inter alia*, because Plaintiffs have failed to exhaust their administrative remedies; because their equal-educational opportunity claim fails to state a claim under *Vitale*; because their non-educational Common Benefits Clause claim fails to state a claim under *Vitale*; because they have failed to state a claim for damages under *Town Highway*; and because their claims are now moot.

### v. School Defendants' Motion to Dismiss

School Defendants have moved to dismiss the fourth amended complaint on all counts pursuant to V.R.C.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. The motion argues that the complaint should be dismissed, *inter alia*, because Plaintiffs' Education Clause claim is foreclosed by the Vermont Supreme Court decision in *Vitale*, and otherwise fails as a matter of law, and is moot; because their non-educational Common Benefits Clause claim fails because it likewise fails to state a claim under *Vitale*, and is otherwise moot; because their V.R.C.P. 75 action does not permit a challenge to tuition decisions of a school district as reviewed by the State; because they failed to timely exhaust their administrative remedies; and because their claims for future tuition relief are now moot.

B. ANALYSIS

### i. Standard on a Motion to Dismiss

Vermont has an "exceedingly low" threshold to survive a 12(b)(6) motion. *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (mem.). Courts generally disfavor and rarely grant these motions. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1. In determining whether a complaint survives a motion to dismiss, the court assumes the factual allegations made by the nonmoving party in the complaint are true and all contravening assertions in the moving party's pleadings are false. *Richards v. Town of Norwich*, 169 Vt. 44, 49 (1999). The court is limited to the allegations and facts as established in Plaintiff's complaint, from which the Court must make all reasonable inferences. *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. To the extent a party asserts "conclusory allegations or legal conclusions masquerading as factual conclusions," the court is not required to accept those as true. *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 33, 216 Vt. 308 (quotation omitted).

The court will only grant the motion if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420. This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11, 179 Vt. 525 (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)). In sum, the court's aim is merely to determine "whether the bare allegations of the complaint are sufficient to state a claim." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605 (mem.).

**ii. Discussion**

a. Violation of the Education Clause (Count I)

Plaintiffs' complaint, while not a model of clarity, due in part to its many iterations, appears to assert in Count I an as-applied challenge under the Education Clause of the Vermont Constitution to 16 V.S.A. § 821—Vermont's elementary school tuitioning statute. Fourth Amended Compl., at ¶ 144–45 (describing the two methods of providing educational opportunity for Vermont children in § 821). The complaint then, however, also goes on to claim that Defendants have violated Plaintiffs' children's "fundamental constitutional right to an education under the Education Clause of the Vermont [C]onstitution" by reference to their "fail[ure] to provide the 'quality basic education' as defined by Vermont's Educational Quality Standards." *Id.*, at ¶ 145–47 (citing *Vitale*, 2003 VT 15, ¶ 11). Given these curious representations, it is difficult to discern whether Plaintiffs assert only that 16 V.S.A. § 821 is unconstitutional as applied to them, or whether it is only some, or all Defendants' "fail[ure] to [observe] Vermont's Educational Quality Standards" that is the source of the supposed violation, or it is both. Out of an abundance of caution, the court addresses both scenarios and potential sub-scenarios within the second scenario.

*1. Plaintiffs have not stated a claim of an as-applied challenge to 16 V.S.A. § 821*

As all the parties readily acknowledge, the Vermont Supreme Court recently rejected a facial constitutional challenge to 16 V.S.A. § 821—Vermont's elementary school tuitioning statute—in *Vitale*. The *Vitale* Court, however, did not foreclose the possibility of an as-applied challenge to the tuitioning statute and observed that such claims could be asserted, *inter alia*, under the Education Clause of the Vermont Constitution. *Vitale*, 2023 VT 15, ¶ 9 ("First, we address parents' argument under the

framework of an equal-educational-opportunity claim. To do so, we analyze Vermont children's right to education under the Education Clause ….").  The Court also expressly recognized that "Vermont children have a fundamental right to education under the Education Clause of the Vermont Constitution[,]" and that it is the "government's 'fundamental obligation' to provide for [that] education." *Id*. ¶ 11.  The decision also left no doubt that the right to education is "a fundamental and *individual* right of Vermont children." *Id*. (emphasis supplied).  But *Vitale* also stands for the proposition that "school choice itself is not an educational opportunity but rather a means to provide for educational opportunities[, and a]s such, school choice is permitted but not required by the Education Clause; there is no entitlement to school tuitioning at the state's expense derived from the Education Clause itself." *Id*. ¶ 13.  And so "[b]ecause school choice is not an educational opportunity itself, in order to state a claim for an equal-educational-opportunity violation[,]" Plaintiffs must meet the requirements outlined by our Supreme Court in its landmark decision *Brigham v. State (Brigham I)*, 166 Vt. 246 (1997) (per curiam). *Id*. ¶ 18.  Stated otherwise, to state a claim under the Education Clause, a party must allege that the legislation they contest has created substantially unequal educational opportunities. *Id*. ¶ 35.  Plaintiffs must be able to allege "facts to create a logical chain," from the legislation to the violation. *Id*. ¶ 38. See also *Vasseur v. State*, 2021 VT 53, ¶ 13, 166 Vt. 246 (identifying that the link between funding and educational opportunities was integral to the claims in *Brigham I*).

Plaintiffs here have categorically not established sufficient facts to create a logical chain between the tuitioning statute and the alleged violation of the Education Clause.  Plaintiffs did not need to prove an injury at the pleading stage of the litigation but needed to have alleged facts in the complaint that show an injury in fact. See *Paige v. State*, 2018 VT 136, ¶¶ 9–10, 209 Vt. 379.  The Supreme Court in *Vitale*, in disposing of a largely similar allegation to that of Plaintiffs in the instant case, conducted the following analysis.

> In *Vasseur v. State*, we identified that the link between funding and educational opportunities was integral to the claims in *Brigham I*. We concluded that the plaintiff, who sought to challenge differences in town representation on school boards, did not have standing because he failed to allege an injury in fact. … We explained that the plaintiff failed to allege any link between differences in school-board representation and differences in educational opportunities and that the alleged injury was therefore entirely different from and inadequate when compared to *Brigham I*.

> The importance of linking allegedly deficient legislative means with differences in educational opportunities arose again a year later in *Boyd v. State*[.] There, the plaintiff challenged Vermont's education-funding statutes, arguing that they deprived children of equal educational opportunities by pointing to differences in the number of courses available and college preparatory testing statistics at two schools in particular. Assuming, without deciding, that the differences identified constituted substantial inequality of educational opportunities, we determined that the plaintiffs failed to demonstrate that the challenged funding system caused the alleged differences in educational opportunities because it was undisputed that more spending would not have created higher levels of educational opportunity at the school with fewer courses

and lower test scores. We accordingly affirmed the trial court's grant of summary judgment to the defendants.

Contrast those two examples with the legally cognizable claims in *Brigham I* and *Brigham v. State* (*Brigham II*), 2005 VT 105, 179 Vt. 525 (mem.). In *Brigham I*, there was uncontroverted evidence that then-existing disparities in funding led to fewer educational opportunities for some students, including but not limited to "unequal curricular, technological, and human resources." There was no reasonable doubt that substantial funding differences significantly affect opportunities to learn. In *Brigham II*, the plaintiffs alleged in their complaint that their school had substantially fewer curricular choices compared to other schools and that this disparity was caused by inadequate funding. We concluded that these allegations were sufficient to survive a motion to dismiss under a Rule 12(b)(6) standard. The complaint here does not allege facts to create a logical chain comparable to that in *Brigham II*. Parents' failure to allege facts to connect school choice with better educational opportunities is fatal to their claim.

Nor can their assertions of their children's experiences save their claim. … Significantly, parents do not make any allegation in the complaint that their children's experiences are evidence of why tuitioning is the type of benefit that affects educational outcomes. … It is also not reasonable to infer, absent any allegation, that if such a link exists, it causes "substantial" inequality of educational outcomes.

*Vitale*, 2023 VT 15, ¶¶ 36–39 (cleaned up). Similarly here, taking all Plaintiffs' allegations as true, they have not connected the requirements of the 16 V.S.A. § 821—Vermont's elementary school tuitioning statute—and the alleged violation of the Education Clause as a result of failures of the Windham Elementary School. Nor have they, for that matter, laid out why tuitioning is the benefit that would affect Plaintiffs' children's educational outcomes. The factual allegations in Plaintiffs' complaint, if anything, merely showcase the deficiencies of the Windham Elementary School, not 16 V.S.A. § 821 as applied to them. Accordingly, Plaintiffs, they have failed to state a claim upon which relief can be granted in Count I.

*2a. Plaintiffs' claim of deprivation of the constitutional right to an education due to Defendants' failure to provide "quality basic education" as defined by Vermont's Educational Quality Standards is moot vis-à-vis their request for an injunction to future tuition*

Next, Plaintiffs contend that "Defendants have deprived the Plaintiffs' children of their fundamental constitutional right to an education by failing to provide the 'quality basic education' as defined by Vermont's Educational Quality Standards." Fourth Amended Compl., at ¶ 147. They support this contention by a deluge of allegations tending to show why the Windham Elementary School provided inadequate education to its students. See Fourth Amended Compl., at ¶¶ 33 *et seq*. The failures at Windham Elementary, Plaintiffs allege, resulted in Defendants' "not providing a basic education in violation of the Education Clause of the Vermont constitution." Plaintiffs' Memo. Opp. to State Mot. to Dismiss (filed Dec. 8, 2023) at 6. Defendants, on the other hand, contend that Plaintiffs' claim is moot. See School Def's.' Mot. to Dismiss (filed Feb. 1, 2024) at 16; Town Def.'s Mot. to Dismiss Fourth Amended Compl., at 4.

> A case becomes moot—and th[e] [c]ourt loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case. See *In re S.H.*, 141 Vt. 278, 280 (1982) ("The general rule is that a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting U.*S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). Stated another way, a case becomes moot when th[e] [c]ourt "can no longer grant effective relief." *Paige*, 2013 VT 105, ¶ 8 (quotation omitted). Importantly, even if a case was not moot when it was first filed, intervening events since its filing can render it moot. See *In re Moriarty*, 156 Vt. 160, 163 (1991) ("Even though there was once an actual controversy, a change in the facts can render an issue or entire case moot.").

*Paige v. State*, 2017 VT 54, ¶ 7, 205 Vt. 287 (cleaned up).  Here, Plaintiffs acknowledge in the most recent iteration of their complaint that the Windham Elementary School has now ceased to operate and Plaintiffs' children have been tuitioned to the nearby Townshend School. Fourth Amended Compl., at ¶ 126.  They, however, contend that the mootness argument fails because "the Windham School Board has only 'temporarily' closed the Windham Elementary School and plans to re-open in the fall[, and so] … the issues complained about by the Plaintiffs will likely re-emerge, [and] Plaintiffs' children will be subjected again to inadequate education and/or substantially unequal educational opportunity next year." Pl's.' Memo. Opp. (filed Feb. 28, 2024) at 12 (citing *In re Durkee*, 2017 VT 49, ¶ 12, 205 Vt. 11 ("The second exception [to the mootness doctrine] applies when the underlying situation is capable of repetition, yet evades review.")).

To meet the exception for cases that are capable of repetition but evading review, a plaintiff must satisfy a two-prong test: (1) the challenged action must be "in its duration too short to be fully litigated prior to its cessation or expiration," and (2) there must be a "reasonable expectation that the same complaining party will be subjected to the same action again." *Price v. Town of Fairlee*, 2011 VT 48, ¶ 6, 190 Vt. 66 (quotation omitted).  Plaintiffs have not alleged that there is a reasonable expectation that they "will be subjected to the same action again."  That is, of course, other than their conclusory allegation that "the issues complained about by the Plaintiffs will likely re-emerge" and their esoteric deduction that the School Board's vote to "temporarily cease operations at Windham Elementary School … for the remainder of the 2023-2024 school year," invites one to conclude that there is, therefore, a reasonable expectation that it will not do so for the 2024-2025 school year.

On this record, Plaintiffs' Education Clause claim in relation to their request for an injunction to future tuition is moot and does not meet the "cases that are capable of repetition but evading review" exception to the mootness doctrine. See *Paige v. State*, 2017 VT 54, ¶ 13 ("Without assessing the first prong of the test for cases that are capable of repetition but evading review, we determine that appellant is unable to satisfy the second prong—he is unable to show that there is a reasonable expectation that he 'will be subjected to the same action again.'").

*2b. Plaintiffs' have stated a claim of deprivation of the constitutional right to an education due to Defendants' failure to provide "quality basic education" as defined by Vermont's Educational Quality Standards vis-à-vis their request for a declaration that Plaintiffs' children's educational rights have been violated while attending the Windham Elementary School*

In *Brigham I*, the Vermont Supreme Court held that education is "a fundamental obligation of state government." 166 Vt. at 264. In *Vitale*, the same court held that "Vermont children have a fundamental right to education under the Education Clause of the Vermont Constitution" and that "[t]he mirror to the government's 'fundamental obligation' to provide for education is Vermont children's fundamental right to that education." 2023 VT 15, ¶ 11. And to reiterate, the *Vitale* Court also observed that education is an individual right under the Vermont Constitution. *Id*.

Plaintiffs contend that the Court's holdings in *Vitale* and *Brigham I* that education is a fundamental right of Vermont children afforded to them by virtue of the Education Clause of the Vermont Constitution, means that the State's failure to discharge its "fundamental obligation" to provide that "fundamental right" *vis-à-vis* the Windham Elementary School and its alleged failure to comply with Vermont's Educational Quality Standards suffice to state a claim here. Indeed, based on the barrage of allegations that Plaintiffs propound, see Fourth Amended Compl. at ¶ 33 *et seq*, tending to show that the Windham Elementary School failed to provide "quality basic education" as defined by Vermont's Educational Quality Standards, and in so doing violated the Education Clause of the Vermont Constitution, Plaintiffs have alleged enough to state a claim for a declaration to that effect against the State of Vermont—the entity with the "fundamental obligation" to provide the "fundamental right" to education in Vermont. See *Brigham I*, 166 Vt. at 268 ("to fulfill its constitutional obligation the state must ensure substantial equality of educational opportunity throughout Vermont."). The same, however, cannot be said as against the remaining Defendants, who do not have that "fundamental obligation" to discharge. Accordingly, this sub-count must be dismissed as against the remaining Defendants.

*2c. Plaintiffs' claim of deprivation of the constitutional right to an education by failing to provide "quality basic education" as defined by Vermont's Educational Quality Standards vis-à-vis their request for damages fails*

Plaintiffs also claim that Defendants' purported failure to discharge their "fundamental obligation" to provide Plaintiffs the "fundamental right" to education in connection with the alleged failures of the Windham Elementary School entitles them to damages. As noted immediately above, since the State is the entity responsible for discharging the "fundamental obligation" to provide for education in Vermont, it should go without saying that any allegations here too can be asserted only against the State. Although not ultimately dispositive, consistent with this reasoning, this sub-count would, had it stated a claim, have been necessarily dismissed as against the remaining Defendants.

As both sides readily observe, the issue of damages under the Education Clause of the Vermont Constitution appears to be an issue of first impression in Vermont. The Vermont Supreme Court

has established a two-step inquiry to determine whether monetary damages are available directly under a particular constitutional provision. [The court] must first consider whether the constitutional provision at issue is self-executing in the sense that it is specific enough to support an action against the state or state officials absent implementing legislation. *Shields*, 163 Vt. at 222. If that hurdle is cleared, [the court] must then "determine whether monetary damages are available as a remedy for a violation" because of the absence of any viable alternative remedy. *Id*.

*Zullo v. State*, 2019 VT 1, ¶ 33, 209 Vt. 298 (cleaned up).  The Court, however, has been "careful in applying this principle in areas where the Legislature has acted to create some remedy ...." *Shields v. Gerhart*, 163 Vt. 219, 231 (1995).  The Court has also expressed restraint "in creating a private damage remedy *even where the Legislature has provided no alternative civil remedy*." *Town Highway*, 2012 VT 17, ¶ 35 (emphasis supplied).  "Where the Legislature has provided a remedy, although it may not be as effective for the plaintiff as money damages, [the court] will ordinarily defer to the statutory remedy and refuse to supplement it." *Id*. (citations and quotation marks omitted).  The ultimate question is then "whether ... compensatory relief is necessary or appropriate to the vindication of the interest asserted." *Id*. (citations and quotation marks omitted).

Here, the constitutional provision at issue—the Education Clause—is not "self-executing in the sense that it is specific enough to support an action [for damages] against the state or state officials absent implementing legislation."  With respect to self-execution, the Vermont Supreme Court has relied on the standard adopted by the United States Supreme Court in *Davis v. Burke*, 179 U.S. 399 (1900).

> A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, ... and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law ....
>
> ...
>
> In short, if complete in itself, it executes itself.

*Shields*, 163 Vt. at 224 (quoting *Davis*, 179 U.S. at 403).  With this general principle in mind, the Court went on to explain that

> [f]irst, a self-executing provision should do more than express only general principles; it may describe the right in detail, including the means for its enjoyment and protection. See *Convention Center Referendum Comm. v. Board of Elections & Ethics*, 399 A.2d 550, 552 (D.C. Ct. App. 1979). Ordinarily a self-executing provision does not contain a directive to the legislature for further action. *Id*. The legislative history may be particularly informative as to the provision's intended operation. *Id*. Finally, a decision for or against self-execution must harmonize with the scheme of rights established in the constitution as a whole.

*Shields*, 163 Vt. at 224.

The Vermont Education Clause provides that "a competent number of schools ought to be maintained in each town unless the general assembly permits other provisions for the convenient instruction of youth." Vt. Const. ch. 2, § 68. In *Brigham I*, the Vermont Supreme Court noted that the Education Clause "states *in general terms* the state's responsibility to provide for education, but is silent on the means to carry it out." *Brigham I*, 166 Vt. at 264 (emphasis supplied); see also *Vitale*, 2023 VT 15, ¶12. Moreover, both *Brigham I* and *Vitale* Courts acknowledged that it is the job of the Legislature to choose the "means" through which to discharge its "fundamental obligation" to provide the "fundamental right" to education to every Vermont child. See *Brigham I*, 166 Vt. at 264; *Vitale*, 2023 VT 15, ¶12. It is, thus, abundantly clear that the verbiage of the Education Clause "express[es] only general principles" that do not "describe the right in detail, including the means for its enjoyment and protection."

As to the second *Shields* criterion that "a self-executing provision does not [ordinarily] contain a directive to the legislature for further action[,]" the Education Clause clearly contains such a directive. See Vt. Const. ch. 2, § 68 ("[A] competent number of schools ought to be maintained in each town *unless the general assembly permits* other provisions for the convenient instruction of youth.") (emphasis supplied).[2]

The third *Shields* criterion "calls for examination of legislative history for guidance as to the intended effect of" § 68. The *Shields* Court has noted that "no record exists of any discussion or debate over the adoption of the Vermont Constitution." *Shields*, 163 Vt. at 225 (citation omitted). But it should be noted that as originally enacted in § 40, the Education Clause merely provided, as it does now, only in slightly more concrete terms than it does now, the state's responsibility to provide for education. See Vt. Const. 1777, ch. 2, § 40 ("A school or schools shall be established in each town, by the legislature, for the convenient instruction of youth, with such salaries to the masters, paid by each town, making proper use of school lands in each town, thereby to enable them to instruct youth at low prices. One grammar school in each county, and one university in this State, ought to be established by direction of the General Assembly."). As a result, this factor cannot be said to support Plaintiffs' position that the Vermont Education Clause is self-executing.

Finally, "the conclusion that the provision is not self-executing, and hence cannot serve as the basis for a cause of action, would not leave someone in Plaintiffs' position without recourse for state failure to provide the right to education." *Shields*, 163 Vt. at 226. Although the Legislature has not created a private right of action for an alleged non-compliance with the Education Quality Standards, which Plaintiffs claim is the source of the violation in the instant case, see 16 V.S.A. § 165(d); see also Vermont State Board of Education Manual of Rules and Practices, Rule 2110, it has created an administrative process for the State to address any non-compliance under § 165. See e.g., 16 V.S.A. §

---

[2] Even if the verbiage of § 68 that "unless the general assembly permits other provisions for the convenient instruction of youth" could be understood as alternative means for the legislature to reach its constitutional obligations rather than a directive to the legislature for further action, this, in and of itself, is not determinative of whether § 68 is self-executing. C.f. *Shields*, 163 Vt. at 225 ("The lack of a specific remedy should not *itself* defeat the contention that a constitutional provision is self-executing.") (emphasis supplied).

165(b)(4) (the State Board may "close an individual school or schools and require that the school district pay tuition to another public school or an approved independent school pursuant to chapter 21 of this title).

On balance, based on the court's examination of the *Shields* criteria, it must be concluded that the Education Clause is not self-executing to the extent that a party may seek damages monetary damages under its provision.[3] Accordingly, Plaintiffs' claim for damages under the Education Clause must necessarily fail. *Zullo*, 2019 VT 1, ¶ 33 (*Only if* the court determines that a constitutional provision is self-executing must the court go on to "'determine whether monetary damages are available as a remedy for a violation' because of the absence of any viable alternative remedy." (emphasis supplied)).[4]

### b. Violation of the Common Benefits Clause (Count II)

As the Supreme Court explained in *Vitale*, "*Brigham I* provides the framework for analyzing a Common Benefits claim in a specific situation where the government benefit identified is education."[5] *Vitale*, 2003 VT 15, ¶ 19. The *Brigham I* Court in its analysis first determined under the Education Clause that the state has a "fundamental obligation to provide for education," before examining under the Common Benefits Clause "whether a law that implicated the state's fundamental obligation to provide for education and resulted in disparate treatment of Vermont schoolchildren based on their geographic location denied those schoolchildren of a common benefit." *Id*. But "[b]ecause school choice is not an educational opportunity itself," *Id*. ¶ 18, in order to state a non-educational, or a more general Common Benefits claim,

> a complaint must contain allegations to satisfy the test set forth in *Baker [v. State*, 170 Vt. 194 (1999)]. Thus, it is insufficient to assert that there is a law that results in some people having a benefit and others not, accompanied by the legal conclusion that this difference in treatment violates the Vermont Constitution. The complaint must contain a "short and plain statement" that (1) defines the part of the community disadvantaged by the legal requirement; (2) identifies the governmental purpose, if any is known, in excluding a part of the community from the benefit; and (3) explains how the omission of a part of the community from the benefit does not bear a reasonable and just relation to a governmental purpose identified. See V.R.C.P. 8(a) (requiring pleadings to contain "short and plain statement" showing "pleader is entitled to relief"); see also *Vt. Hum. Rts. Comm'n*, 2012 VT 88, ¶¶ 11–15, 192 Vt. 552 (concluding based on pleadings that application of statute of limitations did not violate Common Benefits Clause

---

[3] But see *Paige v. State*, No. 167-9-17 Oecv, 2018 WL 11418475 at *4 (Vt. Super. Ct. March 16, 2018) (Harris, J.) (reaching the opposite conclusion in holding, albeit obiter, that the Education Clause of the Vermont Constitution is self-executing.).

[4] The court should note that even if it had found that the Education Clause is self-executing, Plaintiffs could not overcome the hurdle on the second prong of the *Shields* analysis; namely the determination of whether monetary damages are available as a remedy for a violation because of the absence of any viable alternative remedy. *Shields*, 163 Vt. at 222. See 16 V.S.A. § 165.

[5] "*Brigham I* provides the test for an equal-educational-opportunity challenges specifically, and *Baker* provides the test for other types of Common Benefits claims." *Vitale*, 2023 VT 15, ¶ 41.

because Court could not identify part of community denied benefit, and affirming dismissal of complaint for failure to comply with limitations period); *Quinlan v. Five-Town Health All., Inc.*, 2018 VT 53, ¶¶ 23–25, 207 Vt. 503 (same).

*Vitale*, 2003 VT 15, ¶ 24 (footnote omitted and cleaned up).

> Under the third prong of this test, factors that may be considered include "(1) the significance of the benefits and protections of the challenged law; (2) whether the omission of members of the community from the benefits and protections of the challenged law promotes the government's stated goals; and (3) whether the [part of the community receiving the benefit] is significantly underinclusive or overinclusive." While weighing these factors, "courts must look to the history and traditions from which the [s]tate developed as well as those from which it broke."

*Id*. ¶ 20 (cleaned up). Simply put, "[t]o state a claim for a Common Benefits Clause violation under *Baker*, a complaint must demonstrate, on its face, that the challenged law excluding some part of the community from a government benefit does not bear a reasonable and just relation to a governmental purpose." *Id*. ¶ 25. "The requirement that the complaint contain allegations sufficient to 'show that the pleader is entitled to relief' applies in cases involving Common Benefits Clause challenges, whether brought under *Brigham I* or under *Baker*." *Vitale*, 2023 VT 15, ¶ 29 (citing V.R.C.P. 8(a)).

> Accordingly, if the complaint sets forth allegations that make out a prima facie case for a Common Benefits Clause violation, then parents have stated a claim and are entitled to move forward to discovery in order to attempt to prove their case. If they fail to make out a prima facie case, they are not entitled to move forward in the litigation process.

*Vitale*, 2023 VT 15, ¶ 31. When conducting a Common Benefits analysis, "statutes are presumed to be constitutional and [the court] must accord deference to the policy choices made by the Legislature." *Badgley v. Walton*, 2010 VT 68, ¶ 38, 188 Vt. 367.

Plaintiffs' complaint alleges that "[p]roviding school choice for some Vermont children, but not to Plaintiffs' children results in a 'substantial difference in educational opportunities' when comparing Plaintiffs' children and those children who receive the town tuitioning method of state provided education …." Fourth Amended Compl., at ¶ 151. It continues that "[t]here is no 'reasonable and just' governmental purpose in requiring Windham's school children to remain in a school that fails to provide a quality basic education to its children." *Id*., at ¶ 153. It is also Plaintiffs' contention that "[t]he statute providing that 4000 privileged Vermont children are afforded the benefit of town tuitioning, … is a substantially underinclusive benefit, leaving the many Vermont children, including Plaintiffs' children, to have substantially limited educational opportunities." *Id*., at ¶ 154. And because

> [t]he 'history and traditions' from which the State developed [tuitioning] statutes also favor the Plaintiffs' position that the statute requiring Windham students to be forced to continue [to] attend Windham school is unconstitutional, … denying Windham schoolchildren town tuitioning violates their constitutional right to substantially equal educational opportunity afforded other Vermont schoolchildren who have the benefit of town tuitioning.

*Id*. at ¶ 155–56.

As in *Vitale*, here too the complaint certainly alleges that some parents are able to have their children attend the school of their choice at the state's expense while other parents cannot. But just like in *Vitale*, Plaintiffs live in a school district that has, prior to ceasing operations at Windham Elementary, chosen not to tuition and instead maintained a public school. By statute, such a choice is categorically permissible. See 16 V.S.A. § 821(a)(1). But even if the court assumes that Plaintiffs have identified a part of the community that was denied a benefit and a governmental purpose or purposes the challenged statute is meant to achieve, see 16 V.S.A. § 1[6], the complaint fails to allege that the statutes challenged are unreasonable or unjust in light of their governmental purpose.

Plaintiffs' complaint "does not explain how the statute is unreasonable or unjust under the law, especially when judged in relation to a governmental purpose like providing quality education while adapting to local needs and desires." *Vitale*, 2003 VT 15, ¶ 44 (citation omitted).

Accordingly, the complaint does not contain enough to show that the challenged statute violates the Common Benefits Clause.

### b*. Violation of the Common Benefits (Retaliation) (Count II*)

Plaintiffs also seemingly raise a separate Common Benefits Clause argument under *In re Town Highway*. Plaintiffs assert that

> the retaliatory conduct by the Defendants in refusing to pay tuition to four plaintiff families for the Mountain School, where their children have attended since August, 2023, violates the Common Benefits Clause under the factors outlined in *In re Town Highway No. 20*[, and] Defendants' decision to pay extra tuition dollars to Townshend and refuse to pay lower tuition for the students at the Mountain School for the rest of this year is wholly irrational and arbitrary when there is no reason not to accommodate these children whose parents have merely sought to obtain the best education for their children.

Fourth Amended Compl., at ¶ 157–58.

The more specific allegations underlying Plaintiffs' unenumerated Count II* are that "[o]n December 14, 2023, the Windham School Board voted to temporarily cease operations at Windham Elementary School and to pay tuition to educate students at Townshend School for the remainder of the 2023-2024 school year, effective January 1, 2024." Fourth Amended Compl., at ¶ 126. "At the time of

---

[6] 16 V.S.A. § 1 states in pertinent part

> To keep Vermont's democracy competitive and thriving, Vermont students must be afforded substantially equal access to a quality basic education. However, one of the strengths of Vermont's education system lies in its rich diversity and the ability for each local school district to adapt its educational program to local needs and desires. Therefore, it is the policy of the State that all Vermont children will be afforded educational opportunities that are substantially equal although educational programs may vary from district to district.

The Supreme Court in *Vitale* stated that 16 V.S.A. § 1 contains "sufficient information to satisfy the second part of the *Baker* test." *Vitale*, 2023 VT 15, ¶ 43.

[the Board's] decision to tuition the children to Townshend Elementary School[,] the Defendants in this matter knew that four of the six Plaintiff families' children had been enrolled in the Mountain School[—an accredited independent school Plaintiffs claim is eligible for town tuitioning—]since August, 2023." *Id.*, at ¶ 130. The complaint also alleges, *inter alia*, that Defendants knew that some of the Plaintiffs were working for the Mountain School, knew that Plaintiffs struggle to pay tuition, knew that Plaintiffs would be responsible for transporting their children to the Mountain School, and knew that the children attending the school are thriving there. *Id.*, at ¶¶ 131–34. When asked "why [the Board] did not decide to pay tuition for the four plaintiff families whose children had been attending the Mountain School since the beginning of the school year," the Board allegedly replied, "that the State Agency of Education would not approve of such a decision." *Id.*, at ¶ 140. The complaint sums up that

> [b]ased on the bullying, harassment, threats and false charges against Plaintiffs, it is evident that the Defendant School District and the State decided to, in bad faith, retaliate against the four Plaintiff families whose children are attending the Mountain School by refusing to pay tuition to that school, even though tuition is less than at Townshend Elementary School, and there would be no additional transportation costs, forcing the Plaintiff parents to continue to struggle to pay tuition, or force their children to change schools in the middle of the school year.

*Id.*, at ¶ 142.

Defendants, on the other hand, argue that the "*Town Highway* Court expressly limited its holding to the facts before it[,]" that "[the case] seems to be *sui generis*[,]" and since "[t]he allegations in the Fourth Amended Complaint are not substantially similar to those in *Town Highway No. 20*[,] [it] would appear to be inapplicable to the present case." Town Def's' Mot. to Dismiss the Fourth Amended Compl., (filed Feb. 1, 2024) at 5–6. See also *Town Highway*, 2012 VT 17, ¶ 56 ("we expressly limit our holding to the specific circumstance where invidious discrimination by a selectboard violates due process and equal protection and results in injury that finds no adequate, alternative injunctive or compensatory relief"). Assuming without deciding that *Town Highway* guides the court's analysis, Plaintiffs have still failed to state a claim under its rubric.

> To state a claim under *Town Highway*,
>
> a plaintiff must [first] show the denial of a common benefit. In doing so, the plaintiff must show disparate and arbitrary treatment when compared to others similarly situated. Second, the plaintiff must show that the denial directly favors another particular individual or group. Finally, because [the court] must defer to any "reasonable and just" basis supporting a discretionary judgment by a governmental decisionmaker, a plaintiff must demonstrate not only that the decision was wholly irrational and arbitrary, but also that it was actuated by personal motives unrelated to the duties of the defendant's official position, such as ill will, vindictiveness, or financial gain.
>
> This final factor—requiring the showing of an entirely unjustified personal motive—is necessary to bar routine suits aimed merely at forcing a political body to change its decision, not through representative politics, but through judicial action. A constitutional tort action under Article 7 is not designed to review the discretionary

decisions of another branch of government but to remedy harms caused when a governmental body acts in a wholly arbitrary and unjustified manner in violation of Article 7. This end is served by requiring a showing that the discriminatory treatment of the plaintiff was not only irrational, but motivated solely by an actual desire to harm the plaintiff or by other unjustified personal motives such as self-enrichment or the enrichment of others.

*Town Highway*, 2012 VT 17, ¶ 37–38 (cleaned up).

First, Plaintiffs have categorically not alleged facts that would give rise to an inference that Defendants' refusal to pay tuition to the Mountain School "was wholly irrational and arbitrary." Although the complaint asserts that "Defendants' decision to pay extra tuition dollars to Townshend and refuse to pay lower tuition for the students at the Mountain School for the rest of this year is wholly irrational and arbitrary," Fourth Amended Compl., at ¶ 158, these are merely conclusory allegations that the court is not required to accept as true. *Rodrigue*, 2022 VT 9, ¶ 33. As Defendants point out, Plaintiffs assertion here "is based upon Plaintiffs' erroneous understanding that 'the Defendants had all the power necessary to tuition the Windham schoolchildren to the school they were already attending.'" Town Def.'s Mot. to Dismiss Fourth Amended Compl., at 7. Contrary to Plaintiffs' belief, in the absence of an express authorization from the electorate, which Plaintiffs never assert the Windham School Board had, a school board can only tuition a student to another public school. See 16 V.S.A. § 821(c). To tuition a student to an "approved independent elementary school," a school board must have authorization from the electorate, which again, Plaintiffs never assert that the Windham School Board had. See *Id*. § 821(d).[7]

It is quite apparent that in refusing to tuition to the Mountain School, Defendants followed the clear statutory instruction in § 821, and thus, on this record Plaintiffs have failed to allege that the refusal "was wholly irrational and arbitrary."

Second, nowhere do Plaintiffs allege any facts that would give rise to an inference that the School Board's decision "was actuated by personal motives unrelated to the duties of the defendant's official position, such as ill will, vindictiveness, or financial gain." Plaintiffs' allege, *inter alia*, that none of the Windham School Board attorneys "contacted Plaintiffs' attorney regarding the closure of the school or attempted to negotiate with Plaintiffs concerning payment of tuition to the Mountain School," that the Windham School Board indicated that it did not believe the State Agency of Education would approve a decision to tuition students to Mountain School, that "Defendants and their town supporters have been hostile during the period where the Plaintiffs have been seeking to obtain an adequate education for their children," that Plaintiffs "have been harassed and bullied by townspeople," that the Town Constable escorted Plaintiff Crystal Corriveau out of a July 18, 2023 School Board Meeting, and

---

[7] Plaintiffs' argument that the Windham School Board could have decided to pay tuition to the Mountain School under 16 V.S.A. § 563(2) is meritless. Section 563(2) authorizes a school board to "take any action that is required for the sound administration of the school district." Nothing in § 563(2) suggests, however, that a school board can act contrary to the unambiguous instruction in § 821(d), which requires authorization from the voters to pay tuition to independent schools.

that the same Town Constable "investigated" Plaintiff Erin Kehoe for "animal cruelty," when there was no evidence of any abuse of her animals whatsoever. Fourth Amended Compl., at ¶¶ 139–41.

Even if taken as true, these allegations do not rise to the level of "deliberate, decades-long course of discriminatory conduct by [Defendants] so malicious and self-serving as to deny Plaintiffs their fundamental rights to due process and equal treatment under the Vermont Constitution." *Town Highway*, 2012 VT 17, ¶ 81 ("Absent such egregious misconduct, and clear proof of the exacting elements necessary for relief, towns and local officials have no cause for concern about the myriad decisions made in the normal exercise of authority."). Absent such allegations, Plaintiffs' unenumerated Count II* does not state a Common Benefits Clause claim for retaliation under *Town Highway*, and must be, therefore, dismissed.

### c. Injunctive Relief (Count III)

The complaint lists "preliminary and permanent injunction" as Count III. Fourth Amended Compl., at ¶ 159–62. "It is a well-settled rule, however, that a claim for injunctive relief is a *remedy*, *not an independent cause of action*." *Cannon v. U.S. Bank, NA*, 2011 WL 2117015, at *4 (D. Haw. May 24, 2011) (emphasis supplied). See also e.g., *Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1136 (N.D. Cal. 2009) ("A request for injunctive relief by itself does not state a cause of action …."); *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 709 (N.D. Cal. 2009) (same); *Johnson v. D & D Home Loans Corp.*, 2007 WL 9718936, at *2 (E.D. Va. Dec. 6, 2007) (same).

Accordingly, because injunctive relief is a remedy available to Plaintiffs but not a separate cause of action, the court will not consider Count III as a separate cause of action on which to grant relief. The court will, however, consider the relief sought in Count III incorporated into Plaintiffs' prayer for relief. This is consistent with the general mandate of V.R.C.P. 8(f) that "[a]ll pleadings shall be so construed as to do substantial justice."

### ORDER

For the foregoing reasons, Defendants' motions are GRANTED IN PART.

Lest there be any doubt, the only claim that remains is Plaintiffs' Count II, see section B.ii.a.2b *supra*, for deprivation of the constitutional right to an education under the Education Clause due to Defendants' failure to provide "quality basic education" as defined by Vermont's Educational Quality Standards *vis-à-vis* their request for a declaration that Plaintiffs' children's educational rights have been violated while attending the Windham Elementary School. That count also remains only as against the State Defendant. All other counts fail to state a claim, or the court lacks subject-matter jurisdiction over them, and are, therefore, dismissed.

**Signed Electronically on April 23, 2024 pursuant to V.R.E.F. 9(d).**

_____

**David Barra**
**Superior Court Judge**